IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEITH N. DARROW,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION, et al.,<br><br>Defendants. | No. 26-00390-AAQ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KIM CAVITT'S MOTION TO DISMISS COUNT III OF THE AMENDED VERIFIED COMPLAINT**


William N. Sinclair (# 28833)
Todd W. Hesel (# 21466)
Christopher J. Mincher (# 29915)
SILVERMAN|THOMPSON|SLUTKIN|WHITE
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
bsinclair@silvermanthompson.com
thesel@silvermanthompson.com
cmincher@silvermanthompson.com

*Attorneys for Kim Cavitt, AuD*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ALLEGED FACTS ........ 2

LEGAL STANDARDS ........ 11

ARGUMENT ........ 12

I. DARROW LACKS ARTICLE III STANDING BECAUSE HE HAS NOT SUFFERED AN INJURY IN FACT CAUSED BY CAVITT'S CONDUCT. ........ 12

A. Darrow Has Not Suffered An Injury In Fact Sufficient To Support A Damages Claim. ........ 13

B. The Causal Chain From The Filing Of The Ethics Complaint To The Alleged Harms Is Too Attenuated. ........ 14

II. THE AMENDED COMPLAINT FAILS TO MAKE A *PRIMA FACIE* SHOWING OF PERSONAL JURISDICTION OVER CAVITT. ........ 14

A. The Court Lacks Personal Jurisdiction Under Maryland's Long-Arm Statute. ........ 15

1. The cause of action does not arise from any business transactions by Cavitt in Maryland. ........ 15

2. Isolated contacts and nationwide advertising do amount to regular solicitation of business or a persistent course of conduct in Maryland. ........ 17

B. The Court Lacks Personal Jurisdiction Under The Due Process Clause. ........ 19

1. Cavitt is domiciled in Illinois and therefore not subject to general personal jurisdiction in Maryland. ........ 19

2. Cavitt's submission of the Ethics Complaint from Illinois, concerning the activities of a Massachusetts resident in Utah and Texas, does not provide specific personal jurisdiction in Maryland. ........ 20

III. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS. ........ 22

A. Darrow Fails To Adequately Plead The Existence Of Specific Business Relationships Known To Cavitt. ........ 23

B. Darrow Fails To Adequately Plead That Cavitt Intentionally Interfered With His Business Relationships Or Did So Improperly. ........ 26

C. Darrow Fails To Adequately Plead Causation Or Damages. ....................................29

CONCLUSION........................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aegis Bus. Credit, LLC v. Brigade Holdings, Inc.*,
No. 8:21-CV-00668-AAQ, 2023 WL 5352407 (D. Md. Aug. 18, 2023) ........ 22, 23

*AER Advisors Inc. v. Fid. Brokerage Servs. LLC*,
327 F. Supp. 3d 278 (D. Mass. 2018) ........ 26

*Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*,
812 F. Supp. 2d 676 (D. Md. 2011) ........ 18

*Amalgamated Titanium Int'l Corp. v. Mennie Mach. Co.*,
581 F. Supp. 3d 289 (D. Mass. 2022) ........ 26

*American Association of Blood Banks v. Boston Paternity, LLC*,
No. Civ. A. DKC-2008-2046, 2009 WL 2366175 (D. Md. July 28, 2009) ........ 16, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12, 25

*Baughman v. Beter*,
No. 1:23-CV-11278-IT, 2024 WL 4476532 (D. Mass. Oct. 11, 2024) ........ 25

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 12

*Bertram v. Viglas*,
No. CV 19-11298-LTS, 2020 WL 1892187 (D. Mass. Apr. 16, 2020) ........ 27

*Birbiglia v. St. Vincent Hosp., Inc.*,
692 N.E.2d 9 (Mass. 1998) ........ 30

*Birbiglia v. St. Vincent Hosp.*,
No. CA911280, 1994 WL 878836 (Mass. Super. Dec. 29, 1994) ........ 30

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ........ 19

*CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*,
566 F.3d 150 (4th Cir. 2009) ........ 2

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 22

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
334 F.3d 390 (4th Cir. 2003) .......... 20, 21, 22

*Catalana v. Carnival Cruise Lines, Inc.*,
618 F. Supp. 18 (D. Md. 1984) .......... 15

*Chambliss v. Carefirst, Inc*,
189 F. Supp. 3d 564 (D. Md. 2016) .......... 11, 14

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) .......... 20

*Coroneos v. Labowitz*,
No. DKC 19-3579, 2020 WL 2097628 (D. Md. May 1, 2020) .......... 15, 18

*Craig v. Gen. Fin. Corp. of Illinois*,
504 F. Supp. 1033 (D. Md. 1980) .......... 11, 16, 17

*Doriety for Est. of Crenshaw v. Sletten*,
109 F.4th 670 (4th Cir. 2024) .......... 3

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) .......... 12, 13, 14

*Fisher v. Lint*,
868 N.E.2d 161 (Mass. App. Ct. 2007) .......... 28, 29

*Garcia-Garcia v. Costco Wholesale Corp.*,
878 F.3d 411 (1st Cir. 2017) .......... 27

*Geelhoed v. Jensen*,
352 A.2d 818 (Md. 1976) .......... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 19

*Greenwood v. Tides Inn, Inc.*,
504 F. Supp. 992 (D. Md. 1980) .......... 17, 18

*GSP Fin. Servs., LLC v. Harrison*,
No. GJH-18-2307, 2021 WL 288172 (D. Md. Jan. 28, 2021) .......... 23

*Guest-Tek Interactive Ent. Inc. v. Pullen*,
731 F. Supp. 2d 80 (D. Mass. 2010) .......... 24

*Gunty v. Clancy*,
No. 8:25-CV-00928-PX, 2026 WL 145452 (D. Md. Jan. 20, 2026) ........................................ 21

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*,
775 F. Supp. 2d 790 (D. Md. 2011) ............................................................................ 11, 15, 16

*Hart v. Carver*,
No. 1:23-CV-03499-JRR, 2024 WL 4025837 (D. Md. Sept. 3, 2024) ..................................... 21

*Harvey v. Cable News Network, Inc.*,
520 F. Supp. 3d 693 (D. Md. 2021) ............................................................................ 11, *passim*

*Hurysh v. MAXISIQ, Inc.*,
No. 8:25-CV-00507-JRR, 2026 WL 248343 (D. Md. Jan. 30, 2026) ................................. 15, 16

*International Refugee Assistance Project v. Trump*,
883 F.3d 233 (4th Cir.) ............................................................................................................ 12

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ................................................................................................................ 19

*inVentiv Health Consulting, Inc. v. Equitas Life Scis.*,
289 F. Supp. 3d 272 (D. Mass. 2017) ........................................................................................ 23

*Katin v. Nat'l Real Est. Info. Servs., Inc.*, No. CIV. A.,
07-10882DPW, 2009 WL 929554 (D. Mass. Mar. 31, 2009) .................................................... 25

*Koch v. Pechota*,
No. 16-3637, 2017 WL 4316102 (D.N.J. Sept. 28, 2017) ......................................................... 19

*M3 USA Corp. v. Hart*,
516 F. Supp. 3d 476 (E.D. Pa. 2021) ........................................................................................ 19

*Malden Transportation, Inc. v. Uber Techs., Inc.*,
286 F. Supp. 3d 264 (D. Mass. 2017) ............................................................................. 23, 24, 26

*Mullane v. Breaking Media, Inc.*,
433 F. Supp. 3d 102 (D. Mass. 2020) ........................................................................................ 26

*Mulvihill v. Spalding Sports Worldwide, Inc.*,
184 F. Supp. 2d 99 (D. Mass. 2002) .......................................................................................... 26

*Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*,
815 N.E.2d 241 (Mass. App. Ct. 2004) ....................................................................................... 23

*Piccone v. Bartels*,
785 F.3d 766 (1st Cir. 2015) ........................................ 27, 28

*Reddy v. Buttar*,
38 F.4th 393 (4th Cir. 2022)........................................ 19, 20

*Reddy v. Buttar*,
No. 318CV00172FDWDSC, 2019 WL 2106082 (W.D.N.C. May 14, 2019) .......................... 19

*Sindi v. El-Moslimany*,
896 F.3d 1 (1st Cir. 2018) ........................................ 24, 25, 26

*Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*,
308 F.3d 25 (1st Cir. 2002) ........................................ 24

*Sommerville v. Union Carbide Corp.*,
149 F.4th 408 (4th Cir. 2025)........................................ 13

*Speen v. Crown Clothing Corp.*,
102 F.3d 625 (1st Cir. 1996) ........................................ 29

*Tech Plus, Inc. v. Ansel*,
793 N.E.2d 1256 (Mass. App. Ct. 2003) ........................................ 29, 30

*Terry v. Corp. Am. Fam. Credit Union*,
No. CV JKB-19-1065, 2019 WL 5065183 (D. Md. Oct. 9, 2019) .......................... 23

*Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*,
705 F. Supp. 3d 510 (D. Md. 2023) ........................................ 23

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................ 13

*Visnick v. Caulfield*,
901 N.E.2d 1261 (Mass. App. Ct. 2009) ........................................ 28

*Vitale v. MiMedx Grp., Inc.*,
No. 3:19-CV-00529-RBH, 2019 WL 3574616 (D.S.C. Aug. 6, 2019)....................................... 3

Statutes

Md Code Ann., Cts. & Jud. Proc. § 6-103 ........................................ 15, 17

Rules

Fed. R. Civ. P. 8........................................ 12

Defendant Kim Cavitt, AuD, through undersigned counsel, submits this memorandum of law in support of her motion under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss Count III of the Amended Verified Complaint ("Amended Complaint") filed by Plaintiff Keith N. Darrow, PhD.

## INTRODUCTION

Darrow, a Massachusetts resident, seeks relief in federal court in Maryland because he is upset with the sanction imposed on him following a thorough adjudicatory process by his Maryland-based professional organization, the American Speech-Language-Hearing Association ("ASHA"). He has included Cavitt, an Illinois resident, in this lawsuit because her confidential ethics complaint submitted electronically from her Illinois home prompted those adjudicatory proceedings. Darrow's single claim against Cavitt for tortious interference with advantageous business relationships should be dismissed for any, or all, of three reasons.

*First*, Darrow fails to allege facts establishing Article III standing for his claim against Cavitt. The speculative possibility that Darrow may lose business in the future if ASHA's public reprimand is upheld following this litigation is not an injury in fact sufficient to support a damages action against Cavitt, and the causal chain from Cavitt's filing of the ethics complaint to the imposition of the sanction is too remote. Dismissal is therefore warranted under Rule 12(b)(1).

*Second*, Darrow has not made a *prima facie* showing of personal jurisdiction over Cavitt. Her alleged nationwide marketing and isolated Maryland contacts are insufficient for general personal jurisdiction, and her electronic submission of the Ethics Complaint from Illinois concerning non-Maryland activities by a Massachusetts resident does not satisfy Maryland's long-arm statute or the requirements for specific personal jurisdiction under the Due Process Clause. Dismissal is therefore warranted under Rule 12(b)(2).

*Third*, Darrow fails to sufficiently plead any of the four elements required for his tort claim: He does not describe any specific business relationships that will be lost and were known to Cavitt; he fails to allege any improper conduct by Cavitt intended to interfere with his business relationships; and he fails to allege any pecuniary loss as a direct result of Cavitt's actions. Accordingly, if the Court reaches the substance of Darrow's claim against Cavitt, it should dismiss that claim *with prejudice* under Rule 12(b)(6).

## ALLEGED FACTS[1]

Cavitt is a resident of Chicago, Illinois. ECF No. 28 at 4 ¶ 12. She holds a doctoral degree in audiology and is "a former clinical audiologist who currently operates a nationwide audiology consulting firm called Audiology Resources, which 'offers comprehensive operational, compliance, and reimbursement consulting services to hearing healthcare providers throughout the United States.'" *Id.* at 9 ¶ 31 & Ex. E, ECF No. 1-5 at 2.[2]

Darrow is a resident of Sterling, Massachusetts. ECF No. 28 at 3 ¶ 10. He describes himself as "a neuroscientist, audiologist, and certified dementia practitioner with a doctoral degree . . . in speech and hearing bioscience and technology." *Id.* at 7 ¶ 25. Darrow teaches at Worchester University and "is Co-Founder and Principal of AuDExperts," a business that "provides strategic consulting on practice performance, training, revenue optimization, workflow, compliance, and coding/reimbursement optimization" for private audiology practices. *Id.* at 8 ¶¶ 27, 28. Darrow

---

[1] With the limited exception of a declaration offered in support of Cavitt's motion to dismiss under Rule 12(b)(2), *see supra* note 4, the facts described here come from the Complaint and attached exhibits. *See, e.g.*, *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (stating that a court ruling on a 12(b)(6) motion "may consider the complaint itself and any documents that are attached to it").

[2] The Amended Complaint refers to attached exhibits, *see, e.g.*, ECF No. 28 at 7 ¶ 23, but does not include any. Cavitt construes the Amended Complaint as incorporating the exhibits included with the original complaint and cites to them accordingly.

supposedly "derives business from, and maintains" unspecified "professional relationships in every state in the United States." *Id.* at 9 ¶ 30. Darrow considers Audiology Resources to be "a business competitor" with AuDExperts because they "provide overlapping services geared toward private audiology practices throughout the United States." *Id.* at 10 ¶ 33.

Darrow claims that Cavitt has shown "animus" toward him "[f]or the better part of a decade." *Id.* at 10 ¶ 34. The supposed evidence of this animus is "unsolicited" double hearsay statements to Darrow "from colleagues in the audiology space, conference attendees, potential and prospective collaborators, and professional contacts regarding Cavitt's hostility toward him." *Id.* The Amended Complaint does not describe what Cavitt said or when she said it. The only statements quoted are those by unidentified "colleagues" to Darrow: "Why does Kim seem to have it out for you" and "I was told by Kim to be careful about collaborating with you because she says you're unethical." *Id.*

The Amended Complaint further alleges that, at some unspecified time, Cavitt "facilitated" Darrow's removal from the Facebook group "Audiology Happy Hour" for violating the group's policies on marketing. *Id.* at 10 ¶ 35. In connection with Darrow's removal from the group, Cavitt also allegedly "post[ed] defamatory comments about him," *id.*, none which are described.

"More recently," Cavitt allegedly "implicitly and explicitly demonstrated her personal animus toward Dr. Darrow . . . by post[ing] an article" on LinkedIn "titled *Why the Language We Use Matters*." *Id.* at 11 ¶ 36. The article, a full copy of which is attached as Exhibit 1,[3] is an

[3] "[A] court may consider a document outside the complaint at the motion to dismiss stage when the document is integral to the complaint and there is no dispute about the document's authenticity." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (citation and internal quotation marks omitted). These requirements are met here because the article is hyperlinked in the Amended Complaint and Darrow's claim against Cavitt relies in part on allegedly "defamatory comments about him on social media." ECF No. 28 at 34 ¶ 125; *see Vitale*

(continued . . . )

opinion piece on the use in audiology of certain “catchphrases, soundbites, and taglines,” including: “Best practice,” “Best,” “Better,” “Evidence based care,” “Patient centered care,” “Prevent,” “Quality,” and “Successful.” Ex. 1 at 1. It does not “target[]”—or even name—any “individuals” or “entities,” much less Darrow’s “clients, collaborators, and prospective partners.” *Contra* ECF No. 28 at 11 ¶ 37. Its overall point is that all audiologists “need to have the language [they] use in [their] patient and marketing communications reflect the doctors and scientists [they] are,” and that “[h]onest[y] and transparency are tantamount in redefining audiology and hearing aid dispensing in the public eye.” Ex. 1 at 2. As to the terms “cure” and “prevent,” the article urges audiologist “to be cautious” and “focus solely on the language included in the studies, which is more measured, such as ‘correlate,’ ‘contribute,’ ‘link,’ and ‘increased risk.’” *Id.*

The allegedly defamatory statements that are “the subject of this action” are included in an ethics complaint (“Ethics Complaint”) Cavitt filed with ASHA’s Board of Ethics (“Board”) on August 30, 2024. ECF No. 28 at 11–12 ¶¶ 40, 41. ASHA is a non-profit “quasi-public” professional and credentialing organization formed under Kansas law and based in Rockville, Maryland. *Id.* at 3 ¶ 11, 6 ¶ 21. Its members include “audiologists; speech-language pathologists; speech, language, and hearing scientists; audiology and speech-language pathology assistants; and students.” *Id.* at 6 ¶ 21.

ASHA members subject themselves to the jurisdiction of the Board for adjudication of ethics complaints. Ex. B, ECF No. 1-2 at 3. The Board consists of as many as 17 members and must include two public members; at least five audiologists who hold the Certificate of Clinical

---

*v. MiMedx Grp., Inc.*, No. 3:19-CV-00529-RBH, 2019 WL 3574616, at *3 (D.S.C. Aug. 6, 2019) (finding that press release and article were integral to defamation claim, and therefore properly considered when deciding Rule 12(b)(6) motion).

Competence in Audiology; and at least five speech-language pathologists who hold the Certificate of Clinical Competence in Speech-Language Pathology. Ex. C, ECF No. 1-3 at 3.

Cavitt submitted the Ethics Complaint at issue from her home office in Chicago, Illinois. ECF No. 26-3.[4] The Ethics Complaint alleged that Darrow "appear[ed]" to be violating "many aspects" of the ASHA's Code of Ethics ("Code"), Principles of Ethics II and III. Ex. D, ECF No. 1-4 at 2–3. Those portions of the Code, each of which includes multiple subparts, generally require members to "honor their responsibility to achieve and maintain the highest level of professional competence and performance" (Principal II) and to "act with honesty and integrity when engaging with the public and . . . provide accurate information involving any aspect of the professions" (Principal III). *Id.*; *see also* Ex. B, ECF No. 1-2 at 7–8. In the portion of the Ethics Complaint form requesting a "[w]ritten summary of the facts on which the complaint is based," Cavitt described the factual basis for her allegations and included links to websites advertising services offered by Darrow:

> Principle of Ethics II: Dr. Darrow appears, by the website (https://www.intermountainaudiology.com/), to be providing services in Utah while not being licensed as either an audiologist or hearing aid dispenser in Utah (https://secure.utah.gov/llv/search/index.html). He is currently licensed as an audiologist [i]n Massachusetts (https://checkahealthlicense.mass.gov/).
>
> Principle of Ethics III: Dr. Darrow presents himself as a neuroscientist and not an audiologist (which he is licensed) and owns and operates Hearing And Brain Centers of America (https://www.intermountainaudiology.com/). Dr. Darrow markets that he can prevent decline and dementia (https://drkeithdarrow.com/books/) and prescribes supplements that can prevent decline (https://drkeithdarrow.com/supplements/). He states that he teaches people how to prevent cognitive decline and dementia (https://www.excellenceinaudiology.org/). He hosts course s [*sic*] on this topic.

Ex. D, ECF No. 1-4 at 3.

[4] Cavitt incorporates as an exhibit to this renewed motion to dismiss her declaration at ECF No. 26-3 submitted in support of her original motion to dismiss.

Cavitt also included supporting documentation, consisting of a screenshot of a promotional flyer for Darrow's "Preventing Decline World Tour!" advertising stops in Arizona, and an online appointment-request form for a practice in Texas that lists Darrow as a staff member. *Id.* at 6–8.

By submitting the Ethics Complaint, Cavitt affirmed, among other things, that the statements and information provided were "true, complete and accurate to the best of [her] knowledge and belief," and that the complaint was "being brought to the Board of Ethics in good faith and not for the purpose of resolving private, business, legal or other disputes." *Id.* at 5. Cavitt also agreed to ASHA's non-disclosure policy, which generally prohibited her from disclosing the Ethics Complaint and related documents to third parties:

> I understand that all documents, materials, and information relating to the complaint are confidential, and I agree that I will not disclose any such documents, materials, or information to third parties other than: (1) to my attorney, in which event I will provide my attorney with a copy of this non-disclosure statement and require my attorney to agree to this non-disclosure requirement; and (2) to a court or agency in response to a properly issued court order or subpoena. If the Board of Ethics issues a public sanction, I can disclose such sanction to third parties, though the complaint information that resulted in the public sanction shall remain confidential. Additionally, I can provide the same information that I have provided to the Board of Ethics in the complaint to state licensing or regulatory bodies or a professional organization that enforces a code of ethics or a code of professional conduct of which Respondent is a member or applicant for membership, but I cannot disclose that the Respondent is currently the subject of a pending Board of Ethics complaint.
>
> In the event that the Board of Ethics issues a sanction of Written Warning or Reprimand (the two sanctions that the Board of Ethics imposes that are confidential), I agree that I shall not disclose to any third party that a Written Warning or Reprimand was issued, nor shall I disclose any violations resulting in that sanction. I agree to notify the Board of Ethics within two (2) business days of becoming aware that I or anyone else is seeking a court order or subpoena regarding any complaint or decision information by providing the Board of Ethics with specific information regarding the court or agency and the specific documents that are being sought so that ASHA will have an opportunity to be heard by the court regarding whether disclosure should be ordered.

*Id.* at 4.

ASHA's "Practices and Procedures of the Board of Ethics" ("Practices and Procedures"), which must "comply with basic due process considerations," Ex. A, ECF No. 1-1 at 12; ECF No. 28 at 27 ¶ 95, provide for two levels of preliminary review before any ethics complaint can proceed to an "Initial Consideration Hearing." First, the Practices and Procedures require ASHA's Senior Director of Ethics to "determine, in their sole discretion, whether the allegations are ethical in nature," as opposed to "[c]ontract disputes, derogatory remarks, theoretical disputes, terms of service" or other non-ethical matters, and to deny the complaint if it involves the latter. Ex. C, ECF No. 1-3 at 9–10. Second, the Board Chair is required to dismiss the complaint upon determining either that (i) there is insufficient evidence of a Code violation, or (ii) the allegations, if true, amount to only a *de minimis* violation of the Code. *Id.* at 10.

In this case, the Ethics Complaint was neither denied nor dismissed, so it was sent to Darrow to give him an opportunity to respond in writing before an Initial Consideration Hearing. *See id.* at 11. Darrow, through counsel, submitted an 82-page response with nine exhibits. Ex. F, ECF No. 1-6; *see also* ECF No. 28 at 14–15 ¶¶ 50–53. Consistent with the Practices and Procedures, Ex. C, ECF No. 1-3 at 11–12, Cavitt then submitted a written rebuttal, Ex. E, ECF No. 1-5, to which Darrow submitted a 56-page "second response" with eight more exhibits, Ex. G, ECF No. 1-7.

The Board, applying a preponderance of the evidence standard, Ex. C, ECF No. 1-3 at 12, issued an "Initial Determination" finding that Darrow violated Principle of Ethics III, including subparts C, E, and F, and Principle of Ethics IV, including subpart D, Ex. H, ECF No. 1-8; *see also* ECF No. 28 at 16–17 ¶¶ 54–57. The Board's rationale for all the violations was the same: "making multiple misleading and false statements that dementia can be prevented." Ex. H, ECF No. 1-8. The proposed sanction was a public censure. *Id.*; *see also* ECF No. 28 at 16 ¶ 53. The Board did

not address the alleged violation of Principle of Ethics II,[5] and the finding that Darrow violated Principle of Ethics IV did not result from the Ethics Complaint, which did not allege a violation of that principle. ECF No. 28 at 16 ¶ 55; Ex. D, ECF No. 1-4; Ex. H, ECF No. 1-8.

Contemporaneously with the Initial Determination, the Board also issued Darrow an "Order to Cease and Desist" that directed him to stop "[m]aking any public statement that asserts, implies, or suggests that dementia can be prevented." Ex. I, ECF No. 1-9.

Darrow responded by exercising his right to a "Further Consideration Hearing" before the Board. ECF No. 28 at 18 ¶¶ 62–63. In connection with that request, Darrow, through counsel, submitted a pre-hearing brief arguing that the Ethics Complaint should be dismissed for insufficient evidence. *Id.* at 18 ¶ 64; Ex. J, ECF No. 1-10. The brief did not contest that Darrow made statements about preventing dementia. Rather it argued that he had not misled anyone about dementia prevention, had not claimed he could prevent dementia "altogether," and that his "position on dementia prevention, including particularly his statements that dementia is preventable and that he can teach people to prevent it, is both accurate and consistent with the current state of science on this topic." Ex J, ECF No. 1-10 at 2–3; *see also* ECF No. 28 at 19 ¶ 65.

At the Further Consideration Hearing, Darrow testified on his own behalf and presented pre-recorded video testimony from two witnesses. ECF No. 28 at 20 ¶¶ 68–69; *see also id.* Ex. K, ECF No. 1-11. After the hearing, the Board issued a "Decision After Further Consideration" that struck the finding that Darrow violated Principle of Ethics IV; amended the findings of violations

[5] The Amended Complaint alleges that Board "dismissed Cavitt's complaints related to purported violations of Principle of Ethics II, explicitly finding that these allegations were meritless." ECF No. 28 at 13 ¶ 47. But the Initial Determination, which the Amended Complaint cites as support for this statement, *see id.*, says nothing about the alleged violation of Principle of Ethics II, *see* Ex. H, ECF No. 1-8.

of Principle of Ethics III and the scope of the cease-and-desist order; and affirmed the sanction. Ex. L, ECF No. 1-12; *see also* ECF No. 28 at 22 ¶ 75.

As to the violations of Principle of Ethics III and various subparts, the Board struck the previous finding that Darrow had made "false" statements and specified that his misleading statements had been made "in public advertising." Ex. L, ECF No. 1-12. Thus, as revised, the Board found that Darrow made "multiple misleading ~~and false~~ statements <u>in public advertising</u> that dementia can be prevented." *Id.* This finding was based on Darrow's use of the phrases "Preventing Dementia is possible" and "I teach people how to prevent cognitive decline and dementia," which have appeared on his website and related materials. ECF No. 28 at 2 ¶ 2, 12 ¶ 44, 24–25 ¶ 84. The cease-and-desist order was revised to prohibit Darrow from "[m]aking any public advertising statement containing any claim about preventing dementia that does not clarify that 'prevent' means the reduction of risk of dementia." Ex. M, ECF No. 1-13.

Darrow's request for an appeal was denied by ASHA's Ethics Appeal Panel, which, in consultation with outside legal counsel, found that the request "failed to show, by clear and convincing evidence, that the [Board] did not adhere to procedural requirements or that the decision of the [Board] was arbitrary and capricious." Ex. O, ECF No 1-15; *see also* ECF No. 28 at 22–23 ¶¶ 76–77. ASHA agreed, however, to refrain from making any public disclosure about the case during litigation with Darrow. Ex. O, ECF No 1-15.

The Amended Complaint predicts certain future harms to Darrow from AHSA's proposed public censure, including loss of his tenured faculty position, loss of speaking invitations, loss of "status and credentials as an approved continuing education presenter for major professional organizations," an "impaired" ability to publish in peer-reviewed journals, and unspecified "irreparabl[e] harm" to his professional consulting work through AuDExperts and his

"professional credentials and teaching authority as a Certified Dementia Practitioner." ECF No. 28 at 28–29 ¶¶ 97–103.

Darrow asserts two claims against ASHA to prevent these predicted harms. Count I asks the Court to provide Darrow the appellate relief that ASHA denied him by declaring that the Board's decision was "arbitrary and capricious" and "violated its own Practices and Procedures." ECF No. 28 at 30–31 ¶¶ 107–111. He further asks the Court to enjoin ASHA from publicly censuring him. *Id.* ¶ 111(c). Count II, titled "Injunctive Relief," seeks the same remedies. *See id.* at 31–32 ¶¶ 112–116.

As to Cavitt, Count III asserts a single claim styled "tortious interference with advantageous business relationships." *Id.* at 33 ¶¶ 117–27. Darrow cites as the basis for this claim:

(1) unspecified defamatory statements by Cavitt to Darrow's colleagues "[b]eginning nearly a decade ago," which supposedly resulted in some of those colleagues "express[ing] concern about continuing their business or affiliation" with Darrow, *id.* at 33 ¶ 118, 34 ¶ 125;

(2) Cavitt's removal of him "from the Audiology Happy Hour Facebook group and posting other false and defamatory comments about him on social media," *id.* at 34 ¶ 125; and

(3) Cavitt's submission of the confidential Ethics Complaint, which he characterizes as "intentional, willful, and calculated to cause damage to [him] and his business endeavors," *id.* at 34–35 ¶¶ 123, 125.

Darrow alleges that as a result of Cavitt's "tortious interference," he "has suffered and will continue to suffer": (a) "loss of existing and prospective" unidentified "clients"; (b) "loss of" unidentified "speaking engagements and continuing education presentation opportunities"; (c) "damage to his professional reputation and standing in the audiology community"; and (d) "loss of his tenured faculty position at Worcester State University." *Id.* at 35 ¶ 127.

## LEGAL STANDARDS

*Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction*

"A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint." *Chambliss v. Carefirst, Inc*, 189 F. Supp. 3d 564, 568 (D. Md. 2016). A facial challenge, which Cavitt makes here, asserts that the complaint's allegations are insufficient to show subject matter jurisdiction. *See id.* This Court will grant such a motion "where a claim fails to allege facts upon which the court may base jurisdiction." *Id.* (citation and internal quotations omitted).

*Rule 12(b)(2) – Lack of Personal Jurisdiction*

A plaintiff must prove to the Court, by a preponderance of the evidence, that the Court has personal jurisdiction over each defendant. *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 708 (D. Md. 2021). When a defendant challenges the existence of personal jurisdiction, the Court "may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda." *Id.* (citation omitted). The "pleading standards articulated in *Twombly* and *Iqbal*," discussed below, apply to jurisdictional allegations. *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011). If the plaintiff fails to make "a *prima facie* showing of a sufficient jurisdictional basis" even after the disputed facts and inferences are resolved in the plaintiff's favor, the court should grant dismissal. *See Harvey*, 520 F. Supp. 3d at 708; *see also Craig v. Gen. Fin. Corp. of Illinois*, 504 F. Supp. 1033, 1034 (D. Md. 1980) ("Since defendant has contested jurisdiction, the burden of proving sufficient jurisdictional facts rests with plaintiff.").

*Rule 12(b)(6) – Failure to State a Claim*

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," a complaint that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" does not suffice to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). A complaint therefore cannot survive a Rule 12(b)(6) motion to dismiss unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible only when the complaint's factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court must accept as true all factual allegations, it need not do the same with legal conclusions. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

### I. DARROW LACKS ARTICLE III STANDING BECAUSE HE HAS NOT SUFFERED AN INJURY IN FACT CAUSED BY CAVITT'S CONDUCT.

The Amended Complaint should be dismissed under Rule 12(b)(1) because its allegations do not establish Article III standing as to the claim against Cavitt. Standing to sue under Article III of the Constitution "is a bedrock constitutional requirement," *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024), that must be met for every claim and every form of relief, *International Refugee Assistance Project v. Trump*, 883 F.3d 233, 258 (4th Cir.), *vacated on other*

*grounds*, 585 U.S. 1028 (2018). To establish standing, a plaintiff must show (1) that he has suffered or likely will suffer an injury in fact, (2) that the injury likely was caused or will be caused by the defendant, and (3) that the injury likely would be redressed by the requested judicial relief. *Hippocratic Medicine*, 602 U.S. at 380. As to the first requirement for injury in fact, "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id.* at 381. As to the second requirement of causation, it is intended to "screen[] out plaintiffs who were not injured by the defendant's action." *Id.* at 383. Neither requirement is satisfied here.

**A. Darrow Has Not Suffered An Injury In Fact Sufficient To Support A Damages Claim.**

Darrow has not suffered an injury in fact because all his alleged harms are predictions of what he believes third parties will do in the future based on ASHA's *proposed* public censure, which AHSA has withheld pending the outcome of this lawsuit seeking to invalidate it. *See* ECF No. 28 at 28 ¶ 90, Ex. O, ECF No. 1-15. Whatever the merits of Darrow's (questionable) claims against ASHA, his action for injunctive relief is the proper method of redressing his alleged futures harms. He does not have a damages action against Cavitt. As explained by the Supreme Court, and reiterated by the Fourth Circuit, "the form of relief sought matters when assessing the sufficiency of the alleged harm. Thus, while a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, *the risk of future harm on its own does not support Article III standing for a damages claim*." *Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 418 (4th Cir. 2025) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 435, 441 (2016)) (citation modified) (emphasis added), *cert. denied*, No. 25-919, 2026 WL 1463201 (U.S. May 26, 2026).

### B. The Causal Chain From The Filing Of The Ethics Complaint To The Alleged Harms Is Too Attenuated.

The causal chain from Cavitt's filing of the Ethics Complaint to Darrow's alleged future harms from the public censure is also far too attenuated to support Article III standing. Cavitt was not involved in the choice of the sanction. It was an independent discretionary decision by the Board based on what it "deem[ed] appropriate," Ex. A, ECF 1-1 at 12, and it was affirmed by the Board after a Further Consideration Hearing process in which Cavitt did not participate, *see* Ex. K, ECF No. 1-11; Ex. L, ECF No. 1-12. Moreover, whether the sanction ultimately is imposed will depend on the outcome of this litigation, and whether the predicted harms will materialize depends on the independent business decisions of third parties. A plaintiff does not show Article III causation by relying "on speculation about the unfettered choices made by independent actors not before the courts." *Hippocratic Medicine*, 602 U.S. at 383 (citation and internal quotations omitted); *see also Chambliss*, 189 F. Supp. 3d at 569 (explaining that an alleged injury is too speculative when it "requires a lengthy chain of assumptions, including guesswork as to how independent decisionmakers will exercise their judgment" (citation and internal quotations omitted)).

## II. THE AMENDED COMPLAINT FAILS TO MAKE A *PRIMA FACIE* SHOWING OF PERSONAL JURISDICTION OVER CAVITT.

The Amended Complaint also should be dismissed for lack of personal jurisdiction over Cavitt, who lives and works in Chicago, Illinois, and submitted the Ethics Complaint and related documents from that location. *See* ECF No. 26-3. An assertion of personal jurisdiction over a non-resident defendant must (1) "be authorized under the state's long-arm statute," and (2) "comport with the due process requirements of the Fourteenth Amendment." *Harvey*, 520 F. Supp. 3d at 709. The allegations in the Amended Complaint, read together with Cavitt's declaration, do not support an assertion of personal jurisdiction under either state law or due process requirements.

### A. The Court Lacks Personal Jurisdiction Under Maryland's Long-Arm Statute.

"[T]o satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in a Maryland statute that authorizes jurisdiction." *Haley*, 775 F. Supp. 2d at 796. The Amended Complaint invokes §§ 6-103(b)(1) and (b)(4) of the Courts and Judicial Proceedings Article as grounds for personal jurisdiction under Maryland's long-arm statute. ECF No. 28 at 4–5 ¶¶ 16–17; *see generally* Md Code Ann., Cts. & Jud. Proc. ("CJP") § 6-103. Those provisions respectively provide for an exercise of personal jurisdiction over a person who "[t]ransacts any business or performs any character of work or service in the State," CJP § 6-103(b)(1), or "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State," *id.* § 6-103(b)(4). Neither subsection applies to Cavitt based on the facts alleged.

1. *The cause of action does not arise from any business transactions by Cavitt in Maryland.*

An assertion of personal jurisdiction under § 6-103(b)(1) must meet the threshold requirement in § 6-103(a) that the defendant "be sued only on a cause of action arising from" one of the acts enumerated in subsection (b). CJP § 6-103(a); *see Hurysh v. MAXISIQ, Inc.*, No. 8:25-CV-00507-JRR, 2026 WL 248343, at *6 (D. Md. Jan. 30, 2026); *Coroneos v. Labowitz*, No. DKC 19-3579, 2020 WL 2097628, at *4 (D. Md. May 1, 2020). Read together with that limitation, subsection (b)(1) requires "that some purposeful acts have been performed by the defendant in Maryland in relation to one or more of the elements of the cause of action." *Catalana v. Carnival Cruise Lines, Inc.*, 618 F. Supp. 18, 21 (D. Md. 1984) (citation modified), *aff'd*, 806 F.2d 257 (4th Cir. 1986). As to the nature of the necessary purposeful acts, "Maryland courts have construed the

phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Hurysh*, 2026 WL 248343, at *6 (citation and internal quotations omitted).

The Amended Complaint alleges that subsection (b)(1) is met "because Cavitt transacts business and performs work or services in the State of Maryland through, in part, her membership with ASHA, a Maryland-based organization, which gave rise to her submission of the ethics complaint, and her business Audiology Resources." ECF No. 28 at 4 ¶ 16. But the Amended Complaint does not describe any of the supposed business transactions or work or services Cavitt supposedly performed in Maryland, much less connect that alleged activity to one of the elements of the claim against her. These conclusory allegations "are not entitled to the presumption of truth" and cannot support an exercise of personal jurisdiction under subsection (b)(1). *See Haley*, 775 F. Supp. 2d at 799.

To the extent that Darrow relies on the submission of the Ethics Complaint "that is the subject of this action," ECF No. 28 at 11 ¶ 40, as the basis for jurisdiction under subsection (b)(1), that too fails. In *Craig*, this Court concluded that subsection (b)(1) was not satisfied where the defendant's "only contacts with the state consist[ed] of various telephone calls and letters originating from Illinois." 504 F. Supp. at 1038. Similarly, in *American Association of Blood Banks v. Boston Paternity, LLC*, No. Civ. A. DKC-2008-2046, 2009 WL 2366175 (D. Md. July 28, 2009), the defendant did not transact business "within the meaning of subsection (b)(1) by sending a one-page application for [a non-profit organization] affiliate membership to Bethesda in January 2005 and subsequently mailing its annual membership dues to a P.O. Box in Baltimore in 2006, 2007, and 2008." *Id.* at *6. As the Court observed, "Maryland courts . . . have repeatedly held that infrequent contact through mail alone is insufficient to satisfy subsection (b)(1)." *Id.* at *5.

Maryland decisions applying subsection (b)(1) instead involve situations where the defendant, "either personally or through an agent, had actually entered the forum and had engaged in activities in furtherance of the defendant's business." *Craig*, 504 F. Supp. 1038. Accordingly, Cavitt's electronic submission of the Ethics Complaint and related documents from her home in Illinois to ASHA in Maryland does not amount to transacting business in Maryland within the meaning of subsection (b)(1) and cannot support an exercise of personal jurisdiction over her.

The only other specific, Maryland-directed activities Darrow identifies are Cavitt's alleged payment of dues and fees to ASHA, submission of an ASHA ethics complaint against another audiologist, and submission of written testimony in support of Maryland legislation on two occasions separated by four years. *See* ECF No. 28 at 5 nn. 3, 5. For reasons just discussed, this limited activity from afar does not qualify as transacting business in Maryland under subsection (b)(1), and does not, in any event, relate to an element of Darrow's cause of action, as required by subsection (a). Darrow thus fails to show personal jurisdiction under subsection (b)(1).

2. *Isolated contacts and nationwide advertising do amount to regular solicitation of business or a persistent course of conduct in Maryland.*

As to subsection (b)(4), it cannot support an exercise of personal jurisdiction if the defendant's Maryland contacts do not "satisfy one or more or all of the three prongs of that subsection, *i.e.*, that defendant (1) 'regularly does or solicits business' in Maryland, or (2) 'engages in any other persistent course of conduct' in Maryland, or (3) 'derives substantial revenue from goods,' etc. 'used or consumed' in Maryland."[6] *Greenwood v. Tides Inn, Inc.*, 504 F. Supp. 992, 994 (D. Md. 1980). Darrow alleges that the first two prongs are satisfied by Cavitt's membership

[6] The limitation in § 6-103(a) as applied to subsection (b)(4) "refers only to the act or omission which causes tortious injury," and does not further require that the cause of action arise from the defendant's Maryland-based conduct." *Greenwood v. Tides Inn, Inc.*, 504 F. Supp. 992, 996 (D. Md. 1980) (citing *Geelhoed v. Jensen*, 352 A.2d 818, 825 (Md. 1976)).

in ASHA and her business activity through Audiology Resources, which states on its website that it provides "products and services . . . throughout the United States." ECF No. 28 at 5 ¶ 17. These allegations are inadequate.

As already explained, Darrow's membership in and payment of dues to ASHA, are "insufficient to satisfy subsection (b)(1)," so they also "are insufficient to satisfy subsection (b)(4)."[7] *Boston Paternity*, 2009 WL 2366175, at *10; *see also Coroneos*, 2020 WL 2097628, at *8 ("[I]t has been widely held that membership in a state Bar does not have any impact on the jurisdictional analysis." (citation and internal quotations omitted)).

Nor can the advertisement of nationwide services by Audiology Resources though its website support an exercise of personal jurisdiction under subsection (b)(4). The business activity must be specifically directed at Maryland, and here it is not. *Compare Boston Paternity*, 2009 WL 2366175, at *9 (advertisement of "nationwide service" insufficient to satisfy subection (b)(4) where defendant "did not direct its website into Maryland with the manifest intent of engaging in any transaction within the state"), *and Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 683 (D. Md. 2011) (website "accessible anywhere in the world" and that did not "contain geographically focused information for prospective Maryland members" insufficient to satisfy subsection (b)(4)), *with Greenwood*, 504 F. Supp. at 995 ("doing business" prong of subsection (b)(4) met where the defendant "caused thousands of newsletters to be sent to Maryland residents inviting them to stay at defendant's hotel").

In short, there are no grounds for personal jurisdiction over Cavitt under Maryland's long-arm statute.

---

[7] The same goes for the two instances when Cavitt allegedly submitted testimony concerning Maryland legislation.

### B. The Court Lacks Personal Jurisdiction Under The Due Process Clause.

Personal jurisdiction is also lacking under the Fourteenth Amendment's Due Process Clause. An exercise of personal jurisdiction is constitutionally permissible only if the defendant has "minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Harvey*, 520 F. Supp. 3d at 710 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (citation modified). Minimum contacts may result in either general personal jurisdiction, which allows court to "hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State," or specific personal jurisdiction, which requires the suit "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). Darrow does not meet his burden to show either type of personal jurisdiction.

#### *1. Cavitt is domiciled in Illinois and therefore not subject to general personal jurisdiction in Maryland.*

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022). Darrow, however, relies on the same allegations of ASHA membership and nationwide advertising through Audiology Resources. ECF No. 28 at 5–6 ¶ 18. Even if those allegations showed the type of continuous and systematic general business contacts sufficient to support general jurisdiction over *a corporation*—which they do not—this standard does not apply to individuals. "'The Supreme Court has never found an individual could be subject to general personal jurisdiction based on continuous and systematic contacts with a forum.'" *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 490 (E.D. Pa. 2021) (quoting *Koch v. Pechota*, No. 16-3637, 2017 WL 4316102, at *5 (D.N.J. Sept. 28, 2017)); *see also Reddy v. Buttar*, No. 318CV00172FDWDSC, 2019 WL 2106082, at *4 n.3 (W.D.N.C. May 14, 2019)

("Although the United States Supreme Court has not definitively answered whether the 'continuous and systematic contacts' analysis can be applied to individual defendants, the Supreme Court has strongly implied that it cannot and that domicile is the primary basis for a court's exercise of general personal jurisdiction over an individual defendant." (citation and internal quotations omitted)), *aff'd*, 38 F.4th 393 (4th Cir. 2022).

Cavitt is domiciled in Illinois, ECF No. 28 at 4 ¶12, and therefore is not subject to general personal jurisdiction in Maryland.

2. *Cavitt's submission of the Ethics Complaint from Illinois, concerning the activities of a Massachusetts resident in Utah and Texas, does not provide specific personal jurisdiction in Maryland.*

Specific jurisdiction does not exist either. Specific jurisdiction requires, among other things, that the plaintiff's claim arises out of activities directed at the forum state. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003). The only alleged conduct by Cavitt that could meet that requirement is her electronic submission of the Ethics Complaint, as that is the only conduct with any apparent connection to Maryland.

Specific jurisdiction exists based on electronic activity when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Carefirst*, 334 F.3d at 399 (citation and internal quotations omitted); *see also Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 280 (4th Cir. 2009) (describing "effects test" or personal jurisdiction under which the plaintiff must show that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." (citation and internal quotations omitted)).

Even if the first requirement is met by Cavitt's submission of the form to ASHA in Maryland, the remaining two requirements are not. "To subject a defendant to personal jurisdiction, the defendant 'must have acted with the "manifest intent" of targeting Marylanders.'" *Carefirst*, 334 F.3d at 400; *Gunty v. Clancy*, No. 8:25-CV-00928-PX, 2026 WL 145452, at *4 (D. Md. Jan. 20, 2026). If the statement is not aimed at a Maryland audience and concerns non-Maryland activity, the test is not met even if the subject of the statement is a Maryland resident. *See Gunty*, 2026 WL 145452 *4 (knowledge that plaintiff lived in Maryland insufficient to confer personal jurisdiction where defendants' internet activity was aimed at audiences outside Maryland and alleged defamatory statements did not mention Maryland residents); *Hart v. Carver*, No. 1:23-CV-03499-JRR, 2024 WL 4025837, at *8 (D. Md. Sept. 3, 2024) (allegedly defamatory social media post did not create personal jurisdiction in Maryland even if defendant knew plaintiffs were Maryland residents because such knowledge "would be too flimsy a basis to form the requisite foundation of contacts and intention on which to pin due process for purposes of personal jurisdiction.").

The Ethics Complaint here did not concern any Maryland activity. The complaint and supporting documents instead concerned Darrow's "providing services in Utah while not being licensed as either an audiologist or hearing aid dispenser in Utah," other professional activity in Texas, and his national and international marketing activity, including his "Preventing Decline World Tour!" Ex. D, ECF No. 1-4 at 3, 6–8. Nor was the Ethics Complaint "directed at a Maryland audience." *See Gunty*, 2026 WL 145452, at *4; *see also Hart,* 2024 WL 4025837, at *8. It was "sent" to Maryland only because that is where ASHA, the organization responsible for adjudicating the complaint, happens to be located. To the extent any of the individuals responsible for reviewing and adjudicating the Ethics Complaint happened to be Maryland residents, which the complaint

does not allege, it was not intentionally targeted at them because of their status as such. *Cf. Carefirst*, 334 F.3d at 400 (defendant "must have acted with the 'manifest intent' of targeting Marylanders"). Finally, Darrow is not even a Maryland resident, and he does not allege that he suffered any harm in Maryland. *Cf. Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (jurisdiction in California proper where allegedly libelous story "concerned the California activities of a California resident, . . . and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California").

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* at 788–89 (citation and internal quotations omitted)). As this Court has said, it "cannot stand as a willing repository for cases which have no real nexus to the district." *Harvey*, 520 F. Supp. 3d at 712 (citation and internal quotations omitted). The Maryland connection to Cavitt and this litigation is far too tenuous and incidental to allow an exercise of personal jurisdiction consistent with due process.

## III. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.

Even if the Court had subject matter jurisdiction over the claim and personal jurisdiction over Cavitt, Count III cannot survive in this Court or another because it fails to plead sufficient facts to state a claim for tortious interference with advantageous business relationships.

As Cavitt explained in her original motion to dismiss, ECF No. 26-2 at 19, a choice-of-law analysis leads to the conclusion that Darrow's claim is governed by Massachusetts law. In diversity cases, this Court applies the forum state's choice-of-law rules. *Aegis Bus. Credit, LLC v. Brigade Holdings, Inc.*, No. 8:21-CV-00668-AAQ, 2023 WL 5352407, at *3 (D. Md. Aug. 18, 2023). "For tort actions, Maryland adheres to the *lex loci delicti* doctrine, under which courts apply the law of the state where the injury – the last event required to constitute the tort – occurred." *Id.* (citation

and internal quotations omitted). There is no clear Maryland precedent on where, under the *lex loci delicti* doctrine, the injury occurs for purposes of a claim for tortious interference with business relationships, but this Court has treated the plaintiff's home state as the "logical" location of the injury. *See Terry v. Corp. Am. Fam. Credit Union*, No. CV JKB-19-1065, 2019 WL 5065183, at *7 (D. Md. Oct. 9, 2019); *see also GSP Fin. Servs., LLC v. Harrison*, No. GJH-18-2307, 2021 WL 288172, at *6 (D. Md. Jan. 28, 2021) ("Because Plaintiff's principal place of business is in the District of Columbia, District of Columbia law will apply.").

Darrow's home state is Massachusetts, which, consistent with the Amended Complaint's restyled Count III, *see* ECF No. 28-1 at 37, recognizes a claim for "tortious interference with advantageous business relationships,"[8] *see Malden Transportation, Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 281 (D. Mass. 2017). That tort has four elements: "(1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *Id.* at 281–82 (citing *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 815 N.E.2d 241 (Mass. App. Ct. 2004)). The Complaint does not plausibly allege facts satisfying any of these elements.

**A. Darrow Fails To Adequately Plead The Existence Of Specific Business Relationships Known To Cavitt.**

"[T]o satisfy the first element, the plaintiff must prove that he had a business relationship for economic benefit with a third party." *inVentiv Health Consulting, Inc. v. Equitas Life Scis.*, 289

[8] Darrow originally styled Count III as a claim for "tortious interference with prospective advantage," ECF No. 1 at 30, which is the terminology used in Maryland for the equivalent claim, *see, e.g.*, *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 521 (D. Md. 2023). His change to the description of the count suggests he agrees with Cavitt's analysis that Massachusetts law applies.

F. Supp. 3d 272, 283 (D. Mass. 2017) (citation and internal quotations omitted). "Mere speculation regarding potential future business opportunities is insufficient to prove this element." *Sindi v. El-Moslimany*, 896 F.3d 1, 25 (1st Cir. 2018) (citation omitted). Nor is the first element satisfied "where a plaintiff alleges interference only with its general efforts to compete for prospective customers in the market at large." *Guest-Tek Interactive Ent. Inc. v. Pullen*, 731 F. Supp. 2d 80, 87 (D. Mass. 2010) (citation and internal quotations omitted). "Rather, there must be competent evidence of a specific business relationship, the consummation of which was reasonably likely." *Sindi*, 896 F.3d at 25.

Additionally, to satisfy the second element, the Amended Complaint must plausibly allege that the defendant knew of the business relationships interfered with. *Id.* at 26.

The only specific business relationship that Darrow *predicts* will be harmed "[a]s a direct and proximate result of Cavitt's tortious interference" is his tenured faculty position at Worcester University. *See* ECF No. 28 at 28 ¶¶ 97–98, 35 ¶ 127. Darrow's other *predictions* of harm concern unidentified speaking invitations, and presenting, teaching, and consulting opportunities, *see id.* at 28–29 ¶¶ 99–103, all of which are insufficient because a plaintiff "may not speculate about future business relationships when alleging this tort." *Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 48 (1st Cir. 2002); *see also Malden*, 286 F. Supp. 3d at 282.

As to all of Darrow's supposed business relationships, moreover, the Amended Complaint includes only conclusory allegations of Cavitt's knowledge. In reference to Cavitt's alleged statements to Darrow's "colleagues" and her activity on Facebook and LinkedIn, the Amended Complaint states that she "specifically targeted individuals and entities that she knew were Dr. Darrow's clients, collaborators, and prospective partners." ECF No. 28 at 11 ¶ 37. The "specifically targeted individuals and entities" are not identified, and no facts are provided to

explain how Cavitt "knew [they] were Darrow's clients." The Court need not assume the truth of this legal conclusion "couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation and internal quotations omitted).

Elsewhere, the Amended Complaint alleges that Cavitt "knew or should have known of Darrow's existing and prospective and prospective business relationships" because of "the competitive overlap between Dr. Darrow and Cavitt's businesses." ECF No. 28 at 34 ¶ 122. The standard, however, is not what Cavitt "should have known" but what she actually knew, *see, e.g.*, *Sindi*, 896 F.3d at 26, and there is no basis to infer from her purported status as a business competitor that she knew of Darrow's university faculty position or the other unspecified relationships allegedly interfered with. The area of competitive overlap, according to the Amended Complaint, is "for services geared toward private audiology practices" including "consulting on practice performance, training, revenue optimization, workflow, compliance, and coding/reimbursement optimization." ECF No. 28 at 10 ¶ 33. Darrow does not identify a single specific lost opportunity to provide those services that Cavitt knew of at the time of her alleged conduct.

A claim for tortious interference with advantageous business relationships cannot be based on "general competition for prospective customers in the same marketplace." *Katin v. Nat'l Real Est. Info. Servs., Inc.*, No. CIV. A. 07-10882DPW, 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009). The lack of facts showing specific business relationships known to Cavitt is fatal to Darrow's claim. *See Baughman v. Beter*, No. 1:23-CV-11278-IT, 2024 WL 4476532, at *13 (D. Mass. Oct. 11, 2024) (dismissing claim for tortious interference with prospective business advantage where there were "no well pleaded facts" that defendant knew of any potential business relationship); *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 113 (D. Mass. 2020) (same),

*aff'd*, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021); *see also Sindi*, 896 F.3d at 26 ("Because any such prospective business relationships were unknown to the appellants, they cannot form the basis for a finding of tortious-interference liability.").

**B. Darrow Fails To Adequately Plead That Cavitt Intentionally Interfered With His Business Relationships Or Did So Improperly.**

Turning to the third element, Darrow must adequately plead both that Cavitt "intentionally interfered" with an existing or prospective business relationship and did so "for an improper purpose or by an improper means." *Malden,* 286 F. Supp. 3d at 282. He fails to do either. The three acts (or series of acts) identified as intentional interference by Darrow—(1) Cavitt's "defamatory statements" to colleagues and clients, (2) removal of Darrow from a Facebook group and posting of "defamatory comments," and (3) her submission of the Ethics Complaint, *see* ECF No. 28 at 34 ¶ 125— do not satisfy either part of the third element.

Starting with the "defamatory statements" Cavitt has supposedly been making for the "better part of a decade," any statement made more than three years ago is not actionable. *See, e.g.*, *AER Advisors Inc. v. Fid. Brokerage Servs. LLC*, 327 F. Supp. 3d 278, 287 (D. Mass. 2018) (noting three-year limitations period for tortious interference), *aff'd*, 921 F.3d 282 (1st Cir. 2019); *Amalgamated Titanium Int'l Corp. v. Mennie Mach. Co.*, 581 F. Supp. 3d 289, 304 (D. Mass. 2022) (same, defamation). And regardless of when the alleged statements were made, Darrow's description of them does not come close to a plausible claim for defamation. A "defamation plaintiff must plead: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Mulvihill v. Spalding Sports Worldwide, Inc.*, 184 F. Supp. 2d 99, 104 (D. Mass. 2002). Darrow provides almost none of this information. He relates only general "hearsay and gossip" from unidentified individuals

and unspecified times, which does "not provide a solid basis for a defamation claim." *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 428 (1st Cir. 2017); *see also Bertram v. Viglas*, No. CV 19-11298-LTS, 2020 WL 1892187, at *11 (D. Mass. Apr. 16, 2020) ("Bertram's offer of proof to substantiate this alleged defamatory statement is inadmissible hearsay and, as such, is entirely deficient to create a genuine issue for trial.").

Turning next to Cavitt's alleged social media activity, there are no facts showing it was improper or done to interfere with Darrow's business relationship. Cavitt allegedly "facilitated Dr. Darrow's removal from a Facebook group . . . 'Audiology Happy Hour'" because she believed "Darrow was not following the group's 'policies,'" ECF No. 28 at 10 ¶ 35, and Darrow provides no facts indicating any ulterior motive or that her belief was even wrong. Nor does he allege that any of his existing or potential business partners were members of the Facebook group or even aware of it, such that Cavitt could have had the necessary intent to interfere with those relationships.

The only other specific example Cavitt's alleged "animus" toward Darrow on social media is a LinkedIn post that does not mention Darrow, is not directed at any of his actual or perspective business partners, and is an opinion piece on the use of certain terms by audiologist. *See* Ex. 1. Such expressions of pure opinion are constitutionally protected and not actionable under Massachusetts law. *See, e.g.*, *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015).

Lastly, the Ethics Complaint that is "the subject of this action," *id.* ¶ 33, could not have been intended to interfere with any of Darrow's business relationships because it was submitted confidentially to the Board, *see* Ex. C, ECF No. 1-3 at 5; Ex. D, ECF No. 1-4 at 4, and there is no allegation that Cavitt disclosed it to anyone else. *See Singh*, 308 F.3d at 48 (holding that no reasonable jury could find in favor of plaintiff on tortious interference with business advantage

claim where doctor did not "name a single member of the public to whom [a health insurer's peer-review] investigation was disclosed"). The Ethics Complaint also cannot be defamatory, and therefore improper, because the alleged violations of ASHA's ethics principles were statements of opinion for which the supporting facts—statements on websites advertising Darrow's services—were fully disclosed in the "written summary" portion of the Ethics Complaint and the supporting documentation provided by Cavitt. *See* Ex. D, ECF No. 1-4 at 3, 6–8. As noted, "an expression of pure opinion is not actionable," and "defamation cannot arise where the speaker communicates the non-defamatory facts that undergird his opinion."[9] *Piccone*, 785 F.3d at 771 (citations and internal quotations omitted).

The Ethics Complaint is also protected by the litigation privilege. Under Massachusetts law, "[s]tatements made in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith." *Fisher v. Lint*, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007). This privilege "extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding," and it applies to quasi-judicial proceedings with sufficient "procedural safeguards" to "adequately minimize the risk that defamation or other tortious conduct will occur." *Id.* at 167–68; *see also Visnick v. Caulfield*, 901 N.E.2d 1261, 1264 (Mass. App. Ct. 2009).

The ASHA adjudication process here provided extensive procedural safeguards in line with the organization's policy of "comply[ing] with basic due process considerations." Ex. A, ECF No.

[9] Nor is it clear from the Amended Complaint what allegedly false statements were made about Darrow in the Ethics Complaint. Darrow's issue with the Ethics Complaint is its charge that his *own* statements in marketing materials were false and misleading. *See, e.g.*, ECF No. 28 at 34 ¶ 128.

1-1 at 12. The Ethics Complaint was first vetted through two stages of preliminary review to ensure it involved an ethics matter and was supported by sufficient evidence. It was then the subject of an Initial Consideration Hearing that allowed Darrow, through counsel, to submit written briefs and documentary evidence, and which resulted in a written decision and order by the Board applying a preponderance-of-the-evidence standard. Darrow then had the opportunity for a Further Consideration Hearing that allowed additional briefing and the presentation of live and recorded testimony (again through counsel), and which resulted in a revised written decision and order. Finally, Darrow had the opportunity to request an appeal. Although these extensive safeguards have not stopped Darrow from suing in this case, they "serve to reduce the need for tort actions to control injurious statements or testimony," and thus make the Ethics Complaint absolutely privileged. *See Fisher*, 868 N.E.2d at 170.

**C. Darrow Fails To Adequately Plead Causation Or Damages.**

The fourth element requires that "the plaintiff's loss of advantage directly result[ed] from the defendant's conduct." *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 634 (1st Cir. 1996) (citation and internal quotation omitted). A "plaintiff [can]not recover on a claim for tortious interference with advantageous relationships where [he] ha[s] failed to show that [he] had suffered any pecuniary loss as a result of the defendant's actions." *See, e.g.*, *Tech Plus, Inc. v. Ansel*, 793 N.E.2d 1256, 1263 (Mass. App. Ct. 2003).

Here, as already discussed, Darrow attributes all his predicted harms not to Cavitt's submission of the Ethics Complaint, but to "ASHA's proposed unjustified public censure." ECF No. 28 at 28 ¶ 97. For the same reasons that the causal chain is too attenuated to support Article III standing, it also too attenuated to meet the causation requirement for Darrow's tort claim. *See Birbiglia v. St. Vincent Hosp.,* No. CA911280, 1994 WL 878836, at *8 (Mass. Super. Dec. 29, 1994) (insufficient evidence of causation where defendant did not recommend the termination of

staff privileges that was the basis of plaintiff's claim and did not participate in proceedings that resulted in affirmance of termination decision)*, aff'd sub nom. Birbiglia v. St. Vincent Hosp., Inc.*, 692 N.E.2d 9 (Mass. 1998).

Relatedly, Darrow has not suffered the required damages because he has no pecuniary loss. There can "be no recovery on a claim for tortious interference with advantageous relationships unless the elements of the tort ha[ve] been made out, and that pecuniary loss [is] one of those elements." *Ansel*, 793 N.E.2d at 1263.

## CONCLUSION

The Court should dismiss Count III of Darrow's Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, or for failure to state a claim.

Dated: July 13, 2026

Respectfully submitted,

*<u>/s/ William N. Sinclair</u>*

William N. Sinclair (# 28833)
Todd W. Hesel (# 21466)
Christopher J. Mincher (# 29915)
SILVERMAN|THOMPSON|SLUTKIN|WHITE
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
bsinclair@silvermanthompson.com
thesel@silvermanthompson.com
cmincher@silvermanthompson.com

*Attorneys for Kim Cavitt, AuD*