**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KEITH N. DARROW** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| **AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION, et al.** | * | **Civil Action No.: 8:26-cv-00390-AAQ** |
| | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

*****************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendant American Speech Language Hearing Association ("ASHA"), by and through the undersigned counsel, files this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Keith N. Darrow's ("Plaintiff") Amended Verified Complaint ("Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. STATEMENT OF FACTS[1]

ASHA is a "national professional, scientific, and credentialling association with 241,000 members, certificate holders, and affiliates who are audiologists; speech-language pathologists; speech, language, and hearing scientists; audiology and speech-language pathology assistants; and students." Dkt. 28 at p. 6, ¶21. ASHA has a set of bylaws[2] which govern its internal affairs, including membership. *Id.* at p. 7, ¶23. ASHA members agree to abide by ASHA's Code of Ethics (the "Code of Ethics") as a condition of their membership and certification. *Id.*; Dkt. 1-1, p. 4,

[1] For purposes of this Motion, the factual allegations in Plaintiff's Complaint are accepted as true as required under Rule 12(b)(6). ASHA disputes all unwarranted legal conclusions and impermissible argument in the Complaint. Further, facts pertaining to Count III of Plaintiff's Complaint, which is asserted solely against Defendant Kim Cavitt, are omitted.

[2] *See generally* Dkt. 1-1.

§3.1.3. ASHA's Board of Ethics ("BOE") adjudicates complaints alleging violations of the Code of Ethics pursuant to the Practices and Procedures[3] of the BOE ("Practices and Procedures"). Dkt. 28 at p. 7, ¶24.

Plaintiff is a "neuroscientist, audiologist, and certified dementia practitioner" and has various professional engagements in those and related fields. *See id.* at pp. 7-8, ¶¶25-28. On August 30, 2024, the BOE received an ethics complaint[4] against Plaintiff(the "Ethics Complaint"). *Id.* at p. 12, ¶41. The Ethics Complaint, which was submitted by Defendant Kim Cavitt, alleged that Plaintiff made statements that "he could prevent decline and dementia" and that he "teaches people how to prevent cognitive decline and dementia." Dkt. 1-4. The Ethics Complaint alleged that Plaintiff's statements violated ASHA's Principle of Ethics III, which requires individuals to "act with honesty and integrity" and "provide accurate information involving any aspect of the professions."[5] Dkt. 28 at p. 12, ¶41; Dkt. 1-4.

Plaintiff was given an opportunity to respond to the Ethics Complaint and was represented by counsel in his response. *See* Dkt. 1-6. Plaintiff did not deny making the statements quoted in the Ethics Complaint but disputed that his conduct violated the Code of Ethics. Dkt. 28, p. 14–15 ¶50; Dkt. 1-6.[6] Defendant Cavitt was then given an opportunity to reply and provide additional information in support of the Ethics Complaint.[7] In the reply, Defendant Cavitt explained that

---

[3] *See generally* Dkt. 1-3.
[4] *See generally* Dkt. 1-4.
[5] The Ethics Complaint also alleged that Plaintiff misrepresented his credentials as a neuroscientist when he was a licensed audiologist and that he provided services in Utah without a license. Dkt. 28 at p. 12, ¶ 42; Dkt. 1-4. ASHA's BOE did not review these allegations because it was outside ASHA's scope of review. Dkt. 28 at p 16, ¶ 54.
[6] Plaintiff provided "references to published and peer-reviewed medical literature" in support of his position and submitted letters of support from colleagues attesting to Plaintiff's "profound knowledge of neuroscience and audiology" and "high moral and ethical standing" and describing Plaintiff as "a distinguished colleague and influential leader in audiology," who "continues to elevate the standards of care and education in our profession." Dkt. 28 at pp. 15–16, ¶¶51-53.
[7] *See generally* Dkt. 1-5.

Plaintiff's statements regarding preventing dementia and decline could be misleading to consumers. Dkt. 28 at p. 12–13 ¶44; *see* Dkt. 1–5. Plaintiff was then permitted to submit a second response prepared by counsel and additional exhibits in response to Defendant Cavitt's reply.[8]

The BOE issued an Initial Determination, finding that Plaintiff violated Principles of Ethics III and IV.[9] *Id.* at p. 16 ¶54; Dkt. 1-8. The BOE's stated rationale in support of its conclusion for each violation was, "as evidenced by [Dr. Darrow] making multiple misleading and false statements that dementia can be prevented." *Id.* at p. 17, ¶58; Dkt. 1-8. The BOE proposed a public censure, which upon becoming final, would be published in an ASHA publication that is distributed and available to all ASHA members.[10] *Id.* at p. 18, ¶60; Dkt. 1-8. The BOE also issued an Order to Cease and Desist requiring Plaintiff to cease "making any public statement that asserts, implies, or suggests that dementia can be prevented" and to provide written evidence of compliance with the Order within 30 days of the decision. The Initial Determination notified Plaintiff of his right to request a Further Consideration Hearing in front of the BOE where he would have an opportunity to present his case as to why the purported violations of the Code of Ethics should be modified or why the proposed sanction should be reduced. *Id.* at ¶61; Dkt. 1-8.

---

[8] *See generally* Dkt. 1-7.

[9] As to Principle of Ethics III, the BOE found violations of the following: Rule C ("Individuals shall not misrepresent diagnostic information, services provided, results of services provided, products dispensed, effects of products dispensed, or research or scholarly activities."), Rule E ("Individuals' statements to the public shall provide accurate information regarding the professions, professional services and products, and research and scholarly activities."), and Rule F ("Individuals' statements to the public shall adhere to prevailing professional standards and shall not contain misrepresentations when advertising, announcing, or promoting their professional services, products, or research."). *Id.* at p. 17, ¶56; Dkt. 1-8. With respect to Principle of Ethics IV, the BOE found Plaintiff in violation of Rule D ("Individuals shall not engage in any form of conduct that adversely reflects on the professions or on the individual's fitness to serve persons professionally."). *Id.* at ¶57; Dkt. 1-8. The Ethics Complaint did not allege that Plaintiff violated Principle of Ethics IV.

[10] "The Board of Ethics may also provide its Final Decision to any person or entity requesting a copy of the decision. Additionally, the Board of Ethics may provide its Final Decision and relevant case information (a) to any state agency that has provided the Respondent a license or credential or to which the Respondent has applied for a license or credential; (b) to any state agency located in the state where the Respondent resides; (c) to any other professional organization that enforces a code of ethics or code of professional conduct of which the Respondent is a member or an applicant for membership; and (d) as required by law." Dkt. 1-8, p. 3.

On April 11, 2025, Plaintiff requested a Further Consideration Hearing and notified the BOE of his intention to present witnesses. *Id.* at ¶62. In advance of the hearing, as permitted by the BOE's Practices and Procedures, Plaintiff submitted a brief prepared by legal counsel arguing that the Ethics Complaint should be dismissed for insufficient evidence.[11] *Id.* at ¶64; Dkt. 1-7. Plaintiff also submitted the written testimony of an "undisputed expert in the field of neuropsychology, dementia, and dementia prevention," in support of his argument. *Id.* at p. 19, ¶66.

On June 24, 2025, the BOE conducted the Further Consideration Hearing[12] before eleven BOE members. *Id.* at p. 20, ¶68; Dkt. 1-11. Plaintiff was represented by counsel at the hearing. *See* Dkt. 1-11, p. 4. Plaintiff testified on his own behalf and presented testimony from two witnesses. Dkt. 28 at p. 20, ¶69. During the hearing, the BOE questioned Plaintiff's use of the word "prevent" versus "risk reduction" in connection with his work relating to dementia. *Id.* at pp. 20–21 ¶70-73. The BOE also drew a distinction between how the terms are used among members of the medical and science communities versus the general public to whom Plaintiff's statements were being directed. *Id.*

On July 23, 2025, the BOE issued its Decision After Further Consideration[13] concluding again that Plaintiff violated Principle of Ethics III "as evidenced by [Plaintiff] making multiple misleading statements in public advertising that dementia can be prevented." *Id.* at p. 22, ¶75. However, the BOE reversed the finding that Plaintiff had violated Principle of Ethics IV and removed the description of his statements as "false." *Id.* at n.9. The BOE affirmed the proposed

---

[11] *See generally* Dkt. 1-10. In his brief, Plaintiff argued that: (1) there was no evidence that Plaintiff ever misled anyone about dementia prevention; (2) there was no evidence that anything Plaintiff ever stated about dementia prevention was false or inaccurate; and (3) there was no evidence that Plaintiff ever indicated, explicitly or implicitly, that he or anyone else can prevent dementia "altogether," or guarantee that someone never experiences it. Dkt. 28 at p. 19, ¶65.

[12] *See generally* Dkt. 1-11.

[13] Dkt. 1-12.

censure sanction from the Initial Determination of censure against Plaintiff and issued an Amended Order to Cease and Desist[14] directing Plaintiff to cease "making any public advertising statement containing any claim about preventing dementia that doesn't clarify that 'prevent' means the reduction of risk of dementia." *Id.*

On October 6, 2025, Plaintiff submitted a Request for Appeal to the Ethics Appeal Panel appealing the July 23, 2025 Decision After Further Consideration and related Amended Order to Cease and Desist ("Request for Appeal").[15] *Id.* at p. 22, ¶76. The Ethics Appeal Panel is comprised of three members none of whom are members of the BOE. In the Request for Appeal, Plaintiff asserted that the BOE did not adhere to its own procedural requirements and the decision of the BOE was arbitrary and capricious.[16] *Id.* On December 1, 2025, the Ethics Appeal Panel denied Plaintiff's Request for Appeal, stating that Plaintiff failed to show, by clear and convincing evidence, that the BOE did not adhere to procedural requirements or that the decision of the BOE was arbitrary and capricious. *Id.* at p. 23, ¶77; Dkt. 1-15. The Ethics Appeal Panel's denial of Plaintiff's Request for Appeal marked the exhaustion of Plaintiff's remedies and the BOE's Decision After Further Consideration became final (the "Final Decision"). ASHA agreed not to make public disclosure of any matters pertaining to the BOE proceedings, including the public censure, until the termination of this litigation. *Id.* at p. 24, ¶82.

On January 30, 2026, Plaintiff filed this lawsuit. Dkt. 1. Plaintiff filed the Amended Complaint on June 18, 2026. Dkt. 28. Plaintiff's Amended Complaint is a public record and is not

---

[14] Dkt. 1-13.
[15] *See generally* Dkt. 1-14.
[16] ASHA Practices and Procedures § III.J.2 states, in pertinent part, "[t]he request for appeal of a Decision After Further Consideration must assert, by clear and convincing evidence, that the BOE did not adhere to procedural requirements and/or that the decision of the BOE was arbitrary and capricious." Dkt. 1-3, p. 18.

filed under seal. None of the exhibits attached to Plaintiff's verified complaint are filed under seal and are not marked confidential.

## II. STANDARD OF REVIEW

ASHA moves to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a court may dismiss a case when a plaintiff fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and must view those allegations in the light most favorable to the plaintiff. *Lambeth v. Bd. of Comm'rs.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the Court need not accept the "unwarranted inferences, unreasonable conclusions, or arguments" that permeate Plaintiff's Amended Complaint. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted).

The Amended Complaint ostensibly brings two counts against ASHA. Count I requests a declaratory judgment on the following issues: (1) "whether ASHA's Final Decision that the phrases 'preventing dementia is possible' and 'I teach people how to prevent cognitive decline and dementia' are misleading, thereby rendering Dr. Darrow's use thereof a violation of ASHA's Code of Ethics, was arbitrary and capricious;" and (2) "whether ASHA, in rendering its Final Decision against Dr. Darrow, complied with its own Practices and Procedures or violated Dr. Darrow's due process rights and rights to fundamental fairness." Count II purports to be a claim for injunctive relief. However, injunctive relief is not a standalone cause of action. *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 493 (D. Md. 2015). [17]

## III. <u>ARGUMENT</u>

### A. ASHA's Process was not Arbitrary or Capricious and was Fundamentally Fair

ASHA is a private non-profit corporation organized under Kansas law. Dkt. 28 at p. 3, ¶11. Plaintiff describes ASHA is a quasi-public entity engaging in "licensing, accreditation, discipline, and regulation of the audiology profession and is, therefore, subject to common law due process requirements." Dkt. 28 at p. 24, ¶83.

[17] In any case, the injury Plaintiff asserts is highly speculative. Plaintiff seeks to enjoin ASHA from sanctioning him by public censure because he supposedly will suffer immediate, substantial and irreparable injury. However, the allegations claiming Plaintiff's harms are speculative and hyperbolic. Plaintiff argues that a public censure from ASHA will impair his professional reputation which "depends fundamentally on his reputation for scientific integrity, ethical conduct, and academic credibility." Plaintiff argues that one public censure from ASHA will have a ripple effect throughout the industry that will limit his ability to do nearly any business in his field for the foreseeable future.

However, since the Complaint has been pending for the last four months, none of the alleged harm—loss of a tenured faculty position, retraction of speaking engagements, loss of status and credentials, loss of his ability to publish peer-reviewed research and loss of his professional credentials—has occurred. If ASHA's actions were indeed as arbitrary and capricious as Plaintiff contends, he faces little risk of losing his credentials from the International Hearing Society, the American Academy of Audiology, and other professional organizations. Moreover, by filing this Complaint and attaching nearly every document pertaining to his dispute with ASHA and Defendant Cavitt as unsealed exhibits, Plaintiff has created a public file that anyone can access. If Plaintiff truly is concerned about his reputation, he has taken minimal steps to protect it.

The Fourth Circuit has held that "there exists a common law duty on the part of quasi-public private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015). But such organizations are still "private entities, not state actors, and as such are not subject to the strictures of constitutional due process requirements." *Id.*; *see also Med. Inst. of Minnesota v. Nat'l Ass'n of Trade & Tech. Schs.*, 817 F.2d 1310, 1312 (8th Cir. 1987) ("A fundamental principle of federal constitutional law is that private action, no matter how egregious, cannot violate the equal protection or due process guarantees of the United States Constitution."). Instead, courts consider whether the "decision was supported by substantial evidence or otherwise arbitrary and capricious." *Pro. Massage*, 781 F.3d at 166.

Courts recognize that "[t]he nature of voluntary associations requires that their disciplinary actions, when conducted with fundamental fairness, be respected." *Butler v. USA Volleyball*, 285 Ill. App. 3d 578, 585, 673 N.E.2d 1063, 1067 (1996); *see also Pro. Massage*, 781 F.3d at 169 ("[E]lementary principles of administrative law call for significant, though not total, deference to decision making by accreditation agencies."); *Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1243 (D. Kan. 2008) ("[J]udicial intervention in the affairs of private associations is limited, even where the suspension is by a trade or professional organization which has virtual monopoly power over a profession and where there is a showing of 'economic necessity' for membership.") (applying New York law). In other words, the common law duty to employ fair procedures when making decisions affecting their members does not authorize courts to undertake unfettered review of private association decisions. Even where courts entertain challenges to private association discipline, they typically apply a highly deferential standard. *Sharpe v. Am. Acad. of Actuaries*,

285 F. Supp. 3d 285, 293 (D.D.C. 2018) ("Courts ordinarily do not interfere with the internal disciplinary process of voluntary, private associations absent a failure of the association to follow its own rules and should the process be reviewed, a fundamental fairness standard governs."). "Historically, courts have reversed association action only when there was a violation of the constitution or bylaws of the association, when the association rules and proceedings violated concepts of fundamental fairness, or when the association's action was motivated by prejudice, bias, or bad faith." *Butler*, 285 Ill. App. 3d at 583, 673 N.E.2d at 1066.

ASHA's investigation of the Ethics Complaint was fundamentally fair. The investigation proceeded as follows: (1) Plaintiff was given notice of the complaint; (2) he was given an opportunity to respond and present evidence in his defense; (3) after the complainant, Defendant Cavitt, submitted additional information, Plaintiff was given an opportunity to provide a second response to Defendant Cavitt's reply; (4) after an unfavorable initial determination, Plaintiff was allowed to request a further review hearing, prior to which he was permitted to submit a brief and evidence in his defense; (5) at the further review hearing, Plaintiff testified in his own defense and called two witnesses; (6) after a second unfavorable determination, Plaintiff was able to request an appeal, which was denied. Plaintiff was represented by counsel at each stage of the proceeding. All of the foregoing procedures are required under the BOE's Practices and Procedures and all were afforded to Plaintiff. There can be no doubt that the BOE's proceedings were fundamentally fair to Plaintiff.

ASHA's conclusion that Plaintiff's conduct violated the Code of Ethics was not arbitrary or capricious—it was supported by substantial evidence. Significantly, Plaintiff does not deny that he made the statements that are the subject of this action. Instead, Plaintiff disputes that his statements violate ASHA's Code of Ethics. After giving Plaintiff an opportunity to present his case,

ASHA found otherwise. It is not the Court's place to second guess ASHA's determination. *See Pro. Massage*, 781 F.3d at 174 ("Federal courts do not undertake to 're-weigh conflicting evidence, make credibility determinations, or substitute their judgment' for that of the agency."); *Snyder*, 575 F. Supp. 2d at 1243 (the court does not review an association's decision de novo, reweigh the evidence, or second guess credibility determinations) (applying New York law). Plaintiff's disagreement with the substantive merits of the decision does not warrant judicial intervention. *See also Butler*, 285 Ill. App. 3d at 585, 673 N.E.2d at 1067 (courts are reluctant to interfere with disciplinary decisions of voluntary associations). As the Court in *Butler* noted, a person's disagreement with the outcome or application of rules does not render the decision arbitrary. Here, too, Plaintiff's disagreement with ASHA's decision to censure Plaintiff does not mean the decision was arbitrary.

Indeed, the Fourth Circuit has noted that "due process claims dovetail nicely with administrative law concepts of substantial evidence and arbitrary and capricious review because the prominent point of emphasis of due process is one of procedure." *Pro. Massage*, 781 F.3d at 172 (4th Cir. 2015). "When adjudicating common law due process claims against accreditation agencies, courts should focus primarily on whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision." *Id.* (citations omitted). Here—they did. Plaintiff cannot deny that he was afforded a full opportunity to plead his case.

**B. ASHA Followed its Own Practices and Procedures**

Plaintiff repeatedly claims that ASHA failed to follow its own Practices and Procedures while describing, in detail, a multi-step adjudication process, which Plaintiff admits was "designed to provide due process and ensure fair adjudication of ethics complaints." Dkt. 28 at p. 29, ¶96.

Although Plaintiff frames his claims as challenges to ASHA's procedures, Plaintiff primarily disputes the outcome of the process.

In fact, there are only a few instances in the Amended Complaint where Plaintiff's challenge is directed at a procedure rather than the outcome. For example, Plaintiff alleges that the BOE violated its own Practices and Procedures when it concluded that he violated Principle of Ethics IV because the Ethics Complaint was not based on Principle of Ethics IV, and the BOE's Practices and Procedures preclude the BOE from conducting "independent investigations" into complaints of Code of Ethics violations.[18] The BOE reversed the Initial Determination as to the violation of Principle of Ethics IV, so to the extent that the BOE failed to follow its own procedures in that instance, the issue is now moot.

Plaintiff also alleges that ASHA violated its Practices and Procedures by denying his Request for Appeal on the grounds that he "failed to *show*, by clear and convincing evidence, that the BOE did not adhere to procedural requirements or that the decision of the BOE was arbitrary and capricious," when in fact the Practices and Procedures say that "[t]he request for appeal of a Decision After Further Consideration must *assert* by clear and convincing evidence, that the BOE did not adhere to procedural requirements and/or that the decision of the BOE was arbitrary and capricious." (emphasis added.)

Plaintiff further complains that, although the Practices and Procedures indicate that a Request for Appeal will be evaluated by ASHA's Senior Director of Ethics to ensure that the request adheres to ASHA's procedural requirements, the letter denying Plaintiff's request for appeal, which was signed by the Senior Director of Ethics, revealed that "an Ethics Appeal Panel met to review [Plaintiff's Request for Appeal] with ASHA's outside legal counsel present" and,

---

[18] ASHA disputes Plaintiff's characterization of the BOE's finding as an "independent investigation" but accepts the statement as true for the purposes of this Motion.

thus, the decision to deny Plaintiff's Request for Appeal was made by the Ethics Appeal Panel and not the Senior Director of Ethics as required by the rules.

Technical deviations from internal procedures such as these do not amount to a deprivation of due process or fundamental fairness. *See, e.g.*, *Barrash v. Am. Ass'n of Neurological Surgeons, Inc.*, 812 F.3d 416, 420 (5th Cir. 2016) (due process may be satisfied even when an organization's bylaws require additional procedures); *N.A.A.C.P. v. Golding*, 342 Md. 663, 678–79, 679 A.2d 554, 561 (1996) (members in private organizations are entitled to "rudimentary procedural protections, such as notice and an opportunity to be heard, before they may be expelled or deprived of other important membership rights.").

**C. The Court Should Not Exercise its Discretion to Issue a Declaratory Judgment**

Plaintiff asks this Court to issue a judgment declaring: (1) "whether ASHA's Final Decision that the phrases 'preventing dementia is possible' and 'I teach people how to prevent cognitive decline and dementia' are misleading, thereby rendering Plaintiff's use thereof a violation of ASHA's Code of Ethics, was arbitrary and capricious;" and (2) "whether ASHA, in rendering its Final Decision against Plaintiff, complied with its own Practices and Procedures or violated Plaintiff's due process rights and rights to fundamental fairness."

The Declaratory Judgment Act, 28 U.S.C. § 2201, permits, but does not require, courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The generally applicable considerations guiding a district court in deciding whether to entertain a declaratory judgment action are whether the relief sought will serve a useful purpose in clarifying and settling the legal relations in issue and whether it will terminate and afford relief from the uncertainty, insecurity,

and controversy giving rise to the proceeding." *Mut. Ben. Ins. Co. v. Lorence*, 189 F. Supp. 2d 298, 300–01 (D. Md. 2002), *aff'd,* 59 F. App'x 595 (4th Cir. 2003).

Having voluntarily submitted to these procedures, Plaintiff cannot now seek judicial intervention merely because the outcome was unfavorable. *See Butler,* 285 Ill. App. 3d at 585, 673 N.E.2d at 1067 (members who voluntarily submit to disciplinary process, absent fundamental unfairness, cannot challenge it).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, and based on the authorities cited above, Plaintiff's Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: July 16, 2026

Respectfully submitted,

/s/ John Bergin
John Bergin
Maryland Bar No. 22842
Kilpatrick Townsend & Stockton LLP
701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20004
jbergin@ktslaw.com
(202) 481-9942

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July 2026, a copy of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

William M. Krulak, Jr.
Patrick F. Toohey
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 (fax)
wkrulak@milesstockbridge.com
pftoohey@milesstockbridge.com

Todd W. Hesel
Silverman Thompson Slutkin White
1 W. Pennsylvania Avenue #905
Towson, Maryland 21204
(410) 385 2225
(410) 547-2432 (fax)
thesel@silvermanthompson.com

/s/ John Bergin
John Bergin