**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KEITH N. DARROW** | * | |
| **Plaintiff,** | * | |
| v. | * | |
| **AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION, et al.** | * | **Civil Action No.: 8:26-cv-00390-AAQ** |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT, KIM CAVITT'S, MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........................................................................................................ 1

II. LEGAL STANDARDS ................................................................................................ 2

A. Rule 12(b)(1)............................................................................................................ 2

B. Rule 12(b)(2)............................................................................................................ 3

C. Rule 12(b)(6)............................................................................................................ 3

III. ARGUMENT............................................................................................................ 4

A. Dr. Darrow’s Amended Complaint Establishes Article III Standing. ............................... 4

B. This Court May Properly Exercise Personal Jurisdiction Over Cavitt. ............................. 8

1. Maryland’s Long-Arm Statute Is Satisfied. ................................................................ 9

2. The Due Process Clause Is Satisfied......................................................................... 12

3. In the Alternative, Jurisdictional Discovery Should Be Permitted. .......................... 14

C. Dr. Darrow Has Stated a Claim for Tortious Interference. .............................................. 15

1. Tortious Interference under Maryland Law. ............................................................. 15

2. Tortious Interference under Massachusetts Law. ..................................................... 17

IV. CONCLUSION.......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Air Evac EMS, Inc. v. Cheatam,*
910 F.3d 751 (4th Cir. 2018) ....................7, 8

*ALS Scan, Inc. v. Digital Service Consultants, Inc.,*
293 F.3d 707 (4th Cir. 2002) ....................13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)....................3

*Bennett v. Spear,*
520 U.S. 154 (1997)....................2

*Butler v. United States,*
702 F.3d 749 (4th Cir. 2012) ....................3

*Calder v. Jones,*
465 U.S. 783 (1984)....................14

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
334 F.3d 390 (4th Cir. 2003) ....................3, 9, 12, 13

*Carney v. Adams,*
592 U.S. 53 (2020)....................2

*Catalana v. Carnival Cruise Lines, Inc.,*
618 F. Supp. 18 (D. Md. 1984)....................9

*Chambers v. Chambers,*
No. DKC 10-0618, 2011 WL 3512140 (D. Md. Aug. 8, 2011)....................11

*Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,*
259 F.3d 209 (4th Cir. 2001) ....................9, 12

*Coastal Laboratories, Inc. v. Jolly,*
502 F. Supp. 3d 1003 (D. Md. 2020)....................12

*Consulting Eng'rs Corp. v. Geometric Ltd.,*
561 F.3d 273 (4th Cir. 2009) ....................3

*Craig v. General Finance Corp. of Illinois,*
504 F. Supp. 1033 (D. Md. 1980)....................12

*Deal v. Mercer County Board of Education*,
911 F.3d 183 (4th Cir. 2018) ....................................................................................8

*DiCocco v. Garland*,
52 F.4th 588 (4th Cir. 2022) .....................................................................................7

*Elder v. Holland*,
155 S.E.2d 369 (Va. 1967)........................................................................................19

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024).............................................................................................4, 5, 8

*Fidelis Cybersecurity, Inc. v. Partner One Capital, Inc.*,
771 F.Supp.3d 614 (D. Md. 2025)............................................................................10

*Fisher v. Lint*,
868 N.E.2d 161 (Mass. App. Ct. 2007) ............................................................19, 20

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
Civ. No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022)...............................2

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)...................................................................................................12

*Jason Pharm., Inc. v. Jianas Bros. Packaging Co.*,
94 Md. App. 425 (1993) ............................................................................................10

*Johnson-Howard v. AECOM Special Missions Services, Inc.*,
434 F.Supp.3d 359 (D. Md. 2020)..............................................................................3

*Kaser v. Fin. Prot. Mktg., Inc.*,
376 Md. 621 (2003) ...................................................................................................15

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)...................................................................................................14

*Lowy v. Daniel Def., LLC*,
167 F.4th 175 (4th Cir. 2026) ......................................................................................2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................................................2, 4, 7, 8

*Malden Transp., Inc. v. Uber Techs., Inc.*,
286 F. Supp. 3d 264 (D. Mass. 2017) ........................................................................17

*Malinow v. Eberly*,
322 F. Supp. 594 (D. Md. 1971)..................................................................................9

*Mylan Laboratories, Inc. v. Akzo, N.V.*,
2 F.3d 56 (4th Cir. 1993) .......................................................................................3, 15

*Orbita Telecom SAC v. Juvare LLC*,
606 F.Supp.3d 240 (D. Md. 2022) .......... 10, 11

*R.V. v. Mnuchin*,
570 F. Supp. 3d 322 (D. Md. 2021) .......... 4

*Shaffer v. Heitner*,
433 U.S. 186 (1977) .......... 14

*Sibert v. Flint*,
564 F. Supp. 1424 (D. Md. 1983) .......... 9

*Sleph v. Radtke*,
76 Md. App. 418 (1988) .......... 10

*South Carolina v. United States*,
912 F.3d 720 (4th Cir. 2019) .......... 4

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 4

*Tech. Patents, LLC v. Deutsche Telekom AG*,
573 F. Supp. 2d 903 (D. Md. 2008) .......... 11

*Wood v. Blue Diamond Growers*,
722 F.Supp.3d 544 (D. Md. 2024) .......... 2

*Wright v. Willow Lake Apartments (MD) Owner, LLC*,
648 F. Supp. 3d 647 (D. Md. 2023) .......... 15

Statutes

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) .......... 9, 10

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4) .......... 11

Rules

Fed. R. Civ. P. 12(b)(1) .......... 2, 8

Fed. R. Civ. P. 12(b)(2) .......... 3, 14

Fed. R. Civ. P. 12(b)(6) .......... 3, 20

Constitutional Provisions

U.S. Const. amend. XIV .......... 12

Plaintiff, Keith N. Darrow ("Dr. Darrow"), by undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Dismiss Count III of the Amended Verified Complaint (the "Motion") (ECF No. 29) filed by Defendant, Kim Cavitt ("Cavitt"), and in support thereof, states as follows:

## I. INTRODUCTION

Cavitt fundamentally misunderstands Dr. Darrow's claim against her. Count III of the Amended Verified Complaint ("Amended Complaint") (ECF No. 28) plausibly alleges Cavitt—an admitted business competitor of Dr. Darrow's—engaged in a decade-long campaign of disparaging remarks and social media posts driven by personal animus, which culminated in the filing of the baseless Ethics Complaint[1] to ASHA located in Maryland. Cavitt's pattern of tortious conduct was calculated to damage Dr. Darrow's standing in the audiology profession and destroy his business relationships. Indeed, Cavitt has gone as far as admitting that she has "taken steps" to protect the public from Dr. Darrow's "false promises."

Throughout her Motion, Cavitt mischaracterizes Dr. Darrow's claims as contingent upon the outcome of this litigation (i.e., whether ASHA's proposed sanction is upheld). This is incorrect. The Amended Complaint alleges that Dr. Darrow has already suffered (and will continue to suffer) concrete, non-speculative injuries as a direct and proximate result of Cavitt's wrongful actions including, but not limited to, the attorneys' fees Dr. Darrow has incurred in connection with the arbitrary and capricious ethics proceedings perpetrated by ASHA, as well as imminent harm to his reputation. As alleged in the Amended Complaint, the Ethics Complaint is merely the latest manifestation of Cavitt's wrongdoing.

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Amended Complaint.

As set forth below, Cavitt's Motion should be denied. *First*, Dr. Darrow's Amended Complaint establishes Article III standing because he plausibly alleges real, particularized injuries that are fairly traceable to Cavitt's tortious conduct, including the filing of the Ethics Complaint. *Second*, the Amended Complaint makes a *prima facie* showing of personal jurisdiction over Cavitt based upon her repeated and purposeful contacts with Maryland, including the filing of the Ethics Complaint and her persistent course of conduct directed at the State. *Third*, Dr. Darrow states a plausible tortious interference claim by identifying with the required particularity the existing and prospective business relationships harmed or imminently threatened by Cavitt's conduct, and by alleging her knowledge of and intent to harm those relationships, causing damages.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

The plaintiff bears the burden of proving jurisdiction to survive a Rule 12(b)(1) motion to dismiss. *Carney v. Adams*, 592 U.S. 53, 59 (2020). To establish standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Indeed, "at the motion to dismiss stage, the Supreme Court has characterized the *Lujan* standing requirements as being 'relatively modest.'" *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 194 (4th Cir. 2026) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). "The threshold [] to demonstrate standing is lower than that required to state a claim." *Wood v. Blue Diamond Growers*, 722 F.Supp.3d 544, 559, 2024 WL 964222 (D. Md. 2024) (quoting *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, Civ. No. 21-269, 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022)).

### B. Rule 12(b)(2)

When considering whether the plaintiff has made the requisite showing to survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court must take all disputed facts and reasonable inferences in favor of the plaintiff. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Indeed, "the plaintiff need only make a prima facie showing of sufficient jurisdictional basis to survive the jurisdictional challenge." *Johnson-Howard v. AECOM Special Missions Services, Inc.*, 434 F.Supp.3d 359, 365 (D. Md. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). Additionally, in considering a jurisdictional challenge, the court may, in its discretion, permit limited discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).

### C. Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court must accept all well-pleaded facts as true. *Id.* "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012).

## III. ARGUMENT

### A. Dr. Darrow's Amended Complaint Establishes Article III Standing.

Cavitt's standing challenge rests on a mischaracterization of Dr. Darrow's injuries as flowing exclusively from ASHA's proposed public censure. To the contrary, the Amended Complaint alleges injuries Dr. Darrow has *already* sustained as a result of Cavitt's tortious conduct, including the attorneys' fees he incurred (and continues to incur) defending the ethics proceeding Cavitt initiated and the reputational harm caused by her decade-long campaign of disparagement. Those injuries are real, quantifiable, and wholly independent of whether the censure is ever published. The Amended Complaint therefore satisfies each element of Article III standing.

To establish standing, a plaintiff must show "(i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024) (citing *Lujan*, 504 U.S. at 560-61). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *R.V. v. Mnuchin*, 570 F. Supp. 3d 322, 330 (D. Md. 2021) (citing *Lujan*, 504 U.S. at 560). While a past injury clearly qualifies as an injury in fact, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations and citations omitted); *accord South Carolina v. United States*, 912 F.3d 720, 736 (4th Cir. 2019) (requiring "a realistic danger of sustaining a direct injury").

Cavitt's Motion asserts "Darrow has not suffered an injury in fact because all his alleged harms are predictions of what he believes third parties will do in the future…" Motion at 13. This is plainly wrong and contradicted by the clear allegations set forth in the Amended Complaint. Specifically, the Amended Complaint alleges that "[t]he injury, loss, and damage sustained by Dr. Darrow to his current and anticipated business relationships as a result of Cavitt's tortious conduct including, but not limited to, the submission of the ethics complaint, cannot be undone," Am. Compl. ¶ 8, and that Cavitt's statements "would (and did) cause harm to Dr. Darrow's past, present, and future business relationships, including those located in Maryland, Massachusetts, and throughout the United States," Am. Compl. ¶ 38. The Amended Complaint further alleges that, over the course of Cavitt's decade-long campaign, Dr. Darrow heard from business contacts "who expressed concern about continuing their business or affiliation with Dr. Darrow based on Cavitt's false and defamatory remarks," Am. Compl. ¶¶ 34, 118, and that this pattern of conduct "culminated in the defamatory Ethics Complaint that is the subject of this action," Am. Compl. ¶¶ 40, 119. Dr. Darrow further alleges that he "has suffered and will continue to suffer" pecuniary losses, including "damage to his professional reputation and standing in the audiology community." Am. Compl. ¶ 127.

Additionally, the Amended Complaint alleges that "[a]s a direct and proximate result of the filing of the false and defamatory Ethics Complaint published by Cavitt, Dr. Darrow was subjected to ASHA's Board of Ethics proceedings, which resulted in an arbitrary and capricious finding against Dr. Darrow, thereby causing Dr. Darrow significant harm and injury, including the incurrence of attorneys' fees." Am. Compl. ¶ 126. These allegations clearly establish an injury in fact. *See Hippocratic*, 602 U.S. at 381 ("An injury in fact can be a physical injury, monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common

examples.”). To be clear, Dr. Darrow has already paid legal fees to defend himself through a multi-stage administrative proceeding that existed only because Cavitt filed the Ethics Complaint. These, together with Dr. Darrow’s other alleged injuries, are actual damages, which require no future contingency and no action by any third party. These allegations alone defeat Cavitt’s Rule 12(b)(1) motion.

Dr. Darrow separately identifies the specific relationships and credentials that Cavitt’s conduct placed at substantial risk: (i) his tenured faculty position at Worcester State University, which requires him to maintain ASHA certification as a condition of employment; (ii) confirmed speaking invitations for 2026 and beyond, including engagements in Saudi Arabia, Germany, South Korea, Ireland, England, Oklahoma, New York, Arizona, and North Carolina; (iii) his status as an approved continuing-education presenter for ASHA, the International Hearing Society, and the American Academy of Audiology; (iv) his ability to publish in peer-reviewed journals; (v) his reputation-based consulting business, AuDExperts; and (vi) his credentials and teaching authority as a Certified Dementia Practitioner through the National Organization of Certified Dementia Practitioners. *See* Am. Compl. ¶¶ 27, 97-105, 114. These are specific, existing relationships and credentials, each of which is dependent on the professional standing that a public censure would destroy.

Any suggestion that Dr. Darrow’s harms are illusory because they have not yet fully materialized again misapprehends the allegations in the Amended Complaint. ASHA has agreed to withhold public disclosure of the censure only “until the termination of this litigation.” Am. Compl. ¶ 82. Dr. Darrow’s claims for declaratory and injunctive relief against ASHA seek to prevent ASHA from issuing and publishing that censure. His claims against Cavitt are different: they seek, in part, to redress past and present injuries, including the attorneys’ fees he has incurred

and the reputational damage inflicted over a decade of disparagement to his colleagues, clients, and prospective collaborators. Those injuries have already accrued and are unaffected by whether or not the censure is ever issued or published.

The remaining two elements to establish standing—traceability and redressability—are readily satisfied. "For an injury to be traceable, 'there must be a causal connection between the injury and the conduct complained of' by the plaintiff." *Air Evac EMS, Inc. v. Cheatam*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). And to be sure, "at the motion to dismiss stage, [the traceability] burden is relatively modest…." *See DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022). Indeed, the Amended Complaint traces a direct line from Cavitt's conduct to Dr. Darrow's injuries. Specifically, Cavitt filed the Ethics Complaint, which compelled Dr. Darrow to retain counsel and defend the BOE proceedings, which exist only because Cavitt initiated them. *See* Am. Compl. ¶¶ 126-27. That ASHA also contributed to certain harms does not change the analysis, as standing does not require that the defendant be the only (or proximate) cause of the plaintiff's injury. *See Air Evac*, 910 F.3d at 760 ("While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the independent action of some third party not before the court.") (internal quotations omitted). Indeed, Cavitt's statements to Dr. Darrow's colleagues and on social media caused reputational injury without any third-party participation. Am. Compl. ¶¶ 34-36, 125. Dr. Darrow's clear allegations therefore satisfy the traceability element.

Finally, as to redressability, a plaintiff "must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Deal v. Mercer County Board of Education*, 911 F.3d 183, 189 (4th Cir. 2018) (internal citations and quotations omitted).

Here, Dr. Darrow seeks compensatory damages for injuries caused by Cavitt and, "[i]f a defendant's action causes an injury, enjoining or awarding damages for the action will typically redress that injury." *Hippocratic*, 602 U.S. at 380. Dr. Darrow therefore satisfies the redressability element for Article III standing.

In sum, Dr. Darrow has plausibly alleged both concrete and completed injuries—attorneys' fees and reputational harm already sustained—and imminent injuries in the form of specific professional relationships and credentials placed at risk by the proceeding Cavitt set in motion. At the pleading stage, general factual allegations of injury suffice, and the Court must presume that those allegations "embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Cavitt's motion to dismiss under Rule 12(b)(1) should be denied.

**B. This Court May Properly Exercise Personal Jurisdiction Over Cavitt.**

Cavitt's next argument with respect to personal jurisdiction is equally unavailing. Cavitt argues that this Court lacks personal jurisdiction over her because she "did not enter the State of Maryland or engage in any conduct [in Maryland] in connection with the submission of the Ethics Complaint," which Cavitt claims she submitted electronically from her home in Chicago, Illinois. *See* Declaration of Kim Cavitt, AuD at ECF No. 26-3. As set forth below, the Amended Complaint plausibly alleges a sustained pattern of purposeful contacts by Cavitt with the State of Maryland—including her specific and intentional conduct directed at Maryland through the submission of the Ethics Complaint to ASHA—which satisfies both the Maryland long-arm statute and constitutional due process requirements for exercise of personal jurisdiction over a nonresident defendant. Moreover, to the extent any factual disputes exist regarding Cavitt's Maryland contacts, the Court must resolve those disputes in Dr. Darrow's favor at the pleading stage, or, in the alternative, permit jurisdictional discovery.

*1. Maryland's Long-Arm Statute Is Satisfied.*

For a district court to assert personal jurisdiction over a nonresident defendant, the state's long-arm statute must first authorize the exercise of jurisdiction. *See Carefirst*, 334 F.3d at 396 (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). In the Amended Complaint, Dr. Darrow properly invokes Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 6-103(b)(1) and (b)(4) as independent grounds for personal jurisdiction over Cavitt.

Section 6-103(b)(1) authorizes jurisdiction over a person who "[t]ransacts any business or performs any character of work or service in the State." As Cavitt's Motion correctly notes, an assertion of jurisdiction under § 6-103(b)(1) "necessarily invokes the limitation in [§ 6-103(a)] that the cause of action arise from an act enumerated in [§ 6-103(b)(1)]." *Catalana v. Carnival Cruise Lines, Inc.*, 618 F. Supp. 18, 21 (D. Md. 1984) (quoting *Sibert v. Flint*, 564 F. Supp. 1424, 1428 (D. Md. 1983)); *and see Malinow v. Eberly*, 322 F. Supp. 594, 599 (D. Md. 1971) (clarifying that not every element of the cause of action need arise from conduct occurring in Maryland). That limitation is satisfied here. Dr. Darrow's claim against Cavitt does not arise from some unrelated Maryland transaction; it arises, in part, from the Ethics Complaint Cavitt directed into Maryland, which she could file only by virtue of her ASHA membership. The nexus between the forum act and the cause of action is clear. That Cavitt filed the Ethics Complaint without physically setting foot in Maryland does not change the analysis.

To be sure, "a defendant need not ever have been physically in the state to come under the reach of § 6-103(b)(1)," however, "the meaning of 'transact business' is understood to require that the defendant's actions culminate in purposeful activity within Maryland." *Fidelis Cybersecurity, Inc. v. Partner One Capital, Inc.*, 771 F.Supp.3d 614, 630 (D. Md. 2025) (internal quotations and

citations omitted); *accord Sleph v. Radtke,* 76 Md. App. 418, 427-28 (1988) (recognizing that a nonresident who never entered Maryland may nonetheless be found to have transacted business where his actions culminated in purposeful activity in the State). Indeed, "even a single contact with the forum can satisfy the transaction of business standard in [§ 6-103(b)(1)]." *Orbita Telecom SAC v. Juvare LLC*, 606 F.Supp.3d 240, 248 (D. Md. 2022) (citing *Jason Pharm., Inc. v. Jianas Bros. Packaging Co.*, 94 Md. App. 425, 432 (1993)).

The Amended Complaint alleges that "Cavitt transacts business and performs work or services in the State of Maryland through, in part, her membership with ASHA, a Maryland-based organization, which gave rise to her submission of the ethics complaint, and her business Audiology Resources, Inc., which provides operation compliance and reimbursement consulting and training products and services to hearing healthcare providers throughout the United States, including the State of Maryland." Am. Compl. ¶ 16 (internal quotations omitted). Cavitt purposefully directed the Ethics Complaint to ASHA's Director of Ethics in Maryland and continued to communicate with ASHA personnel in Maryland thereafter. Am. Compl. ¶ 15. These were not passive or tangential contacts. Critically, Cavitt did not simply transmit a communication to a recipient who happened to be located in Maryland. Instead, she directed her submission into Maryland because Maryland is where ASHA is located. She aimed targeted, intentional communications into Maryland to initiate adjudicatory proceedings in the State, and those communications constitute the transaction of business under § 6-103(b)(1).

Section 6-103(b)(4) provides an independent basis for jurisdiction. It authorizes jurisdiction over a person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if [she] regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services,

or manufactured products used or consumed in the State." As compared to subsection (b)(1), subsection (b)(4) "has been construed as a general jurisdiction statute." *Orbita Telecom*, 606 F. Supp. 3d at 250 (citing *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 912 n.11 (D. Md. 2008)).

The Amended Complaint alleges a persistent course of conduct by Cavitt in Maryland. Specifically: (a) Cavitt has directed payment of membership dues and fees to ASHA in Maryland over the course of many years of membership, Am. Compl. ¶ 17 & n.3; (b) Cavitt has submitted at least one other ethics complaint to ASHA in Maryland for adjudication against another audiologist, demonstrating a pattern of directing ethics complaints to the Maryland-based BOE; (c) Cavitt has submitted written testimony to the Maryland General Assembly on multiple occasions over several years regarding audiology legislation, including as recently as March 25, 2026, Am. Compl. ¶ 17 & n.5; (d) Cavitt has submitted written testimony to the Maryland State Board of Examiners for Audiologists; and (e) Cavitt's business, Audiology Resources, Inc., serves hearing healthcare clients in Maryland, Am. Compl. ¶¶ 16, 31. These contacts are neither isolated nor fortuitous. Rather, they reflect purposeful, repeated engagement with Maryland spanning several years in multiple settings. *See Chambers v. Chambers*, 2011 WL 3512140, at *4 (D. Md. Aug. 8, 2011) (finding a *prima facie* showing of a "persistent course of conduct" under § 6-103(b)(4) where defendants created blogs, posted website comments, and sent emails to Maryland to defame the plaintiff). Cavitt's persistent course of conduct renders personal jurisdiction in Maryland under § 6-103(b)(4) appropriate.

The cases Cavitt relies on regarding these issues are readily distinguishable. For example, in *Craig v. General Finance Corp. of Illinois*, the court dismissed for lack of personal jurisdiction where the defendant's only contacts with Maryland were collection letters and telephone calls

originating from Illinois to a debtor who had unilaterally relocated to Maryland. 504 F. Supp. 1033, 1038 (D. Md. 1980). Other than the letters and telephone calls, the court found that the defendant had never *purposefully* availed itself of the privilege of conducting activities in Maryland. *Id.* at 1039. Here, by contrast, Cavitt has *deliberately* and repeatedly engaged with Maryland over many years, including maintaining active membership in ASHA (a Maryland-based organization), operating a consulting business that serves Maryland clients, submitting written testimony to the Maryland General Assembly on multiple occasions, and affirmatively directing the Ethics Complaint to ASHA's Director of Ethics in Maryland for the purpose of initiating adjudicatory proceedings she knew would occur in and emanate from Maryland. Am. Compl. ¶¶ 15-18.

*2. The Due Process Clause Is Satisfied.*

In addition to Maryland's long-arm statute, the exercise of jurisdiction must also comport with the due process requirements of the Fourteenth Amendment. *See Carefirst*, 334 F.3d at 396 (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). "For a non-resident defendant, 'due process requires only that ... a defendant ... have certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Coastal Laboratories, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1017 (D. Md. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "A 'minimum contacts' determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state." *Id.* As a result, based upon a defendant's minimum contacts, a court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.*

With respect to specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 397. Where a plaintiff's claims arise, in part, from electronic activity by the defendant, specific jurisdiction exists when a defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 399 (quoting *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002)).

The Amended Complaint satisfies each of these factors. *First*, Cavitt directed electronic activity into Maryland. She submitted the Ethics Complaint electronically to ASHA's Board of Ethics in Maryland and, after doing so, "continued to purposefully direct communications toward this judicial district by, among other conduct and activities, sending emails to ASHA's Director of Ethics located in the State of Maryland." Am. Compl. ¶ 15. *Second*, Cavitt directed that activity into Maryland with the manifested intent of engaging in business and other interactions in Maryland. Cavitt maintains an active membership with ASHA, a Maryland-based organization, Am. Compl. ¶¶ 15-16, and operates Audiology Resources, Inc., which serves hearing healthcare clients "across the country, including in Maryland," Am. Compl. ¶¶ 16, 31. She invoked the Maryland-based proceedings and "knew or had reason to know that the harm caused by her tortious conduct would be felt by Dr. Darrow through, and emanate from, proceedings in the State of Maryland." Am. Compl. ¶¶ 15, 18. *Third*, Cavitt's activity created a cause of action cognizable

in Maryland courts. As alleged, the Ethics Complaint set in motion the Maryland-based proceedings, which caused Dr. Darrow concrete injury emanating from the State. *Id.*

Cavitt's insistence that she acted from her home in Illinois is beside the point. When judging minimum contacts, the due process inquiry turns on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Further, a nonresident defendant whose intentional and tortious actions are expressly aimed at the subject forum must reasonably anticipate being haled into court there. *Id.* at 789-90. Cavitt purposefully directed activities toward Maryland by invoking the Maryland-based ASHA proceedings, which she has done at least once before, knowing the resulting harm "would be felt by Dr. Darrow through, and emanate from, proceedings in the State of Maryland." Am. Compl. ¶¶ 15-16 & n.3, 18, 48. Maryland is thus the focal point of the tortious conduct and the situs of the mechanism by which Cavitt inflicted the injury. That Dr. Darrow himself resides outside of Maryland does not alter the analysis. Indeed, "the plaintiff's lack of contacts will not defeat otherwise proper jurisdiction." *Id.* at 788 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)). In fact, Dr. Darrow alleges that he derives business from, and maintains professional relationships in, Maryland. Am. Compl. ¶ 30. What matters is that Cavitt purposefully reached into Maryland to accomplish her wrongful objective.

For each of the reasons articulated above, Dr. Darrow has established personal jurisdiction over Cavitt, and therefore, Cavitt's motion to dismiss under Rule 12(b)(2) should be denied.

*3. In the Alternative, Jurisdictional Discovery Should Be Permitted.*

In the alternative, if the Court determines that further factual development would assist its jurisdictional analysis, Dr. Darrow respectfully requests limited jurisdictional discovery before dismissal. *See Mylan Labs,* 2 F.3d at 64 ("[L]imited discovery may be warranted to explore

jurisdictional facts in some cases….”). Cavitt has placed her Maryland contacts at issue through her declaration, and the facts bearing on those contacts rest largely in her possession. Targeted discovery into the scope of Cavitt's Maryland client base and revenue, the full extent of her communications with ASHA personnel in Maryland, the history of her ASHA membership and dues payments, her prior ethics complaints submitted to the Maryland-based BOE, and her appearances before Maryland legislative and regulatory bodies would further establish the basis for personal jurisdiction. At a minimum, Dr. Darrow should be afforded that opportunity before his claim is dismissed on a record Cavitt alone controls.

### C. Dr. Darrow Has Stated a Claim for Tortious Interference.

Preliminarily, Cavitt alleges that Massachusetts law applies to Dr. Darrow's tortious interference claim based upon Maryland's application of the *lex loci delicti* doctrine. Motion at 22-23. Cavitt further notes that Dr. Darrow's original Verified Complaint (ECF No. 1) styled Count III as "Tortious Interference with Prospective Advantage," which is how such claims are typically styled under Maryland law. As a practical matter, however, Dr. Darrow has stated a claim for tortious interference under both Maryland and Massachusetts law.

#### *1. Tortious Interference under Maryland Law.*

Under Maryland law, "[a] claim of tortious interference with a prospective advantage has four elements that must be established: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and resulting loss." *See, e.g., Wright v. Willow Lake Apartments (MD) Owner, LLC*, 648 F. Supp. 3d 647, 669 (D. Md. 2023) (citing *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621 (2003)).

As to the first and second elements, the Amended Complaint alleges intentional and willful acts calculated to cause damage to Dr. Darrow in his lawful business and relationships. Specifically, Cavitt "intentionally interfered with Dr. Darrow's existing and prospective business relationships by: (a) making false defamatory statements to Dr. Darrow's colleagues, clients, and professional contacts; (b) removing Dr. Darrow from the Audiology Happy Hour Facebook group and posting other false and defamatory comments about him on social media; and (c) filing the false and defamatory Ethics Complaint with ASHA, which Cavitt knew or should have known would result in proceedings that could damage Dr. Darrow's professional reputation and business relationships." Am. Compl. ¶ 125. Dr. Darrow further alleges this conduct was "intentional, willful, and calculated to cause damage to Dr. Darrow and his business endeavors." *Id.* ¶¶ 34-38, 40, 118-19, 123. The Amended Complaint further identifies the lawful business harmed, including Dr. Darrow's consulting business, AuDExperts, his speaking and continuing education engagements, his academic and publishing relationships, and his tenured faculty position, and alleges Cavitt knew or should have known of those existing and prospective relationships given the parties' competitive overlap. *Id.* ¶¶ 30, 33, 37, 120-22.

As to the third element, the Amended Complaint alleges that Cavitt's "conduct and actions were perpetrated with the intentional and improper purpose of causing damage to Dr. Darrow and without justifiable cause or purpose." Am. Compl. ¶ 124. The Amended Complaint pleads supporting facts throughout, including that: (a) Cavitt is a self-admitted business competitor whose company provides overlapping services to the same market; (b) Cavitt told Dr. Darrow's colleagues and prospective collaborators "to be careful about collaborating with [him] because she says [he is] unethical"; (c) Cavitt banned him from a professional Facebook group and posted defamatory comments about him; (d) Cavitt published a LinkedIn article accusing audiologists

who use the term "prevent" of "false promises and fear mongering," mirroring the language of her Ethics Complaint; (e) Cavitt "specifically targeted individuals and entities that she knew were Dr. Darrow's clients, collaborators, and prospective partners"; and (f) Cavitt admitted taking "steps, through professional associations and state licensure boards," against Dr. Darrow. *Id.* ¶¶ 7, 33-37, 39-40, 47, 122, 126.

Finally, the Amended Complaint alleges actual damage and resulting loss. Dr. Darrow alleges that, as a "direct and proximate result of the filing of the false and defamatory Ethics Complaint," he had to defend the BOE proceedings and incurred attorneys' fees—a pecuniary loss independent of any censure. Am. Compl. ¶ 126. He further alleges loss of existing and prospective clients of AuDExperts, loss of speaking and continuing education opportunities, damage to his professional reputation and standing in the audiology community, and the threatened loss of his tenured faculty position at Worcester State University. *Id.* ¶¶ 97-105, 114, 118, 127. Based on these well-pleaded allegations, Dr. Darrow has stated a claim for tortious interference under Maryland law.

*2. Tortious Interference under Massachusetts Law.*

Under Massachusetts law, "a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one; (2) the defendant knew about the relationship; (3) the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and (4) the plaintiff suffered damages as a result." *Malden Transp., Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 281-82 (D. Mass. 2017). The Amended Complaint adequately pleads each element.

Regarding the first element, Cavitt argues that Dr. Darrow has not identified specific business relationships that Cavitt's conduct harmed. Motion at 23-24. This argument ignores the

Amended Complaint's explicit allegations. First, the Amended Complaint identifies Dr. Darrow's existing and prospective clients for his consulting business, AuDExperts, and his speaking engagements and continuing education presentations. Am. Compl. ¶¶ 28, 30, 127(a)-(b).

The Amended Complaint likewise plausibly alleges Cavitt's knowledge of these relationships. Cavitt is a self-admitted business competitor of Dr. Darrow's, and AuDExperts and Audiology Resources provide "overlapping services geared toward private audiology practices throughout the United States." Am. Compl. ¶¶ 7, 33-40. Cavitt admits she "[has] taken steps, through professional associations and state licensure boards, to ensure that the public and audiologists are protected from [Dr. Darrow's] false promises." *Id.* ¶ 47. She could not have taken aim at Dr. Darrow's standing with audiologists and the public without knowing of his relationships with them. The Amended Complaint also identifies his tenured faculty position at Worcester State University, which requires ASHA certification as a condition of employment. Am. Compl. ¶¶ 97-98, 114(a), 127(d).

The third element is satisfied by a decade-long pattern of conduct, not a single isolated act. Cavitt told Dr. Darrow's colleagues and prospective collaborators to "be careful about collaborating" with him because "she says you're unethical." Am. Compl. ¶ 34. Further, Cavitt facilitated Dr. Darrow's removal from the "Audiology Happy Hour" Facebook group, posted defamatory comments about him, and published a LinkedIn article accusing audiologists who use the term "prevent" of "false promises and fear mongering," which is language mirroring the Ethics Complaint. *Id.* ¶¶ 35-36. Dr. Darrow further alleges that Cavitt filed the Ethics Complaint, which was "intentional, willful, and calculated to cause damage to [Dr. Darrow] and his business endeavors." *Id.* ¶¶ 123, 125. Dr. Darrow has clearly alleged that Cavitt acted by improper means.

Finally, the Amended Complaint adequately pleads causation and damages. Cavitt argues that Dr. Darrow's harms are attributable only to ASHA's censure. However, both categories of Dr. Darrow's claimed damages defeat that argument. First, Dr. Darrow alleges damage to his "professional reputation and standing in the audiology community" resulting from Cavitt's years of disparaging statements—harm that predates and is independent of any censure. *Id.* ¶ 127(c). Second, Dr. Darrow has incurred attorneys' fees defending the BOE proceedings that the Ethics Complaint set in motion. Am. Compl. ¶ 126. These are concrete losses that Dr. Darrow has already sustained, regardless of the outcome of these proceedings.

Cavitt's reliance on the Massachusetts litigation privilege does not change this analysis. The privilege extends to a quasi-judicial proceeding only where that proceeding affords "procedural safeguards" sufficient to "adequately minimize the risk that defamation or other tortious conduct will occur." *See Fisher v. Lint*, 868 N.E.2d 161, 167-68 (Mass. App. Ct. 2007); *and see Elder v. Holland*, 155 S.E.2d 369 (Va. 1967). Cavitt thus assumes the facts the Amended Complaint challenges. Dr. Darrow alleges ASHA disregarded its own Practices and Procedures at multiple stages of the proceedings. Am. Compl. ¶¶ 55, 79, 89-93, 96. Again, the Court must accept those allegations as true at this stage. In any event, the privilege reaches only statements made in or preliminary to the proceeding. *Fisher*, 868 N.E.2d at 167-68. Here, Dr. Darrow's claims also include years of disparagement Cavitt made wholly outside of the ASHA proceedings. Am. Compl. ¶¶ 34-36.

In sum, at the pleading stage, Dr. Darrow must only plausibly allege his claims. Dr. Darrow's allegations that a direct business competitor engaged in a decade-long campaign of disparagement, which culminated in the filing of an Ethics Complaint to damage his business, more than satisfy that standard. As set forth above, Dr. Darrow has stated a claim for tortious

interference under both Maryland and Massachusetts law. Therefore, Cavitt's motion to dismiss Count III under Rule 12(b)(6) should be denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff, Keith N. Darrow, respectfully requests that this Court deny Defendant, Kim Cavitt's, Motion to Dismiss Count III of the Amended Verified Complaint.

Dated: August 17, 2026

Respectfully submitted,

*/s/ William M. Krulak, Jr.*

William M. Krulak, Jr., Fed. Bar No. 26452
Patrick F. Toohey, Fed. Bar No. 20723
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 (fax)
wkrulak@milesstockbridge.com
pftoohey@milesstockbridge.com

*Attorneys for Plaintiff,*
*Keith N. Darrow*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of August 2026, I caused a copy of the foregoing to be served via ECF filing on all counsel of record and sent by e-mail to:

John T. Bergin
Kilpatrick Townsend & Stockton LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20004
jbergin@ktslaw.com

Samera S. Ludwig
Kilpatrick Townsend & Stockton LLP
500 W. Madison Street, Suite 3700
Chicago, Illinois 60661
sludwig@ktslaw.com

William N. Sinclair
Todd W. Hesel
Christopher J. Mincher
Silverman Thompson Slutkin & White
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
bsinclair@silvermanthompson.com
thesel@silvermanthompson.com
cmincher@silvermanthompson.com

/s/ *William M. Krulak, Jr.*
William M. Krulak, Jr.