# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KEITH N. DARROW** | * | |
| **Plaintiff,** | * | |
| v. | * | |
| **AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION, et al.** | * | **Civil Action No.: 8:26-cv-00390-AAQ** |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION'S, MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. Dr. Darrow's Request for Declaratory Relief is Appropriate. .......... 3

B. The Amended Complaint Plausibly Alleges that ASHA's Decision was Arbitrary and Capricious. .......... 4

C. The Amended Complaint Plausibly Alleges that ASHA Failed to Follow its Own Practices and Procedures. .......... 9

D. The Amended Complaint Plausibly Alleges Violations of Dr. Darrow's Due Process Rights. .......... 11

E. Dr. Darrow Properly Seeks Injunctive Relief in Connection with the Declaratory Judgment Claim. .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................2

*Butler v. United States*,
702 F.3d 749 (4th Cir. 2012) ......................................................................................2

*Butler v. USA Volleyball*,
673 N.E.2d 1063 (Ill. App. Ct. 1996) ........................................................................5

*Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*,
No. DKC 09–0100, 2011 WL 856374 (D. Md. Mar. 9, 2011) ....................................3

*Dwoskin v. Bank of Am., N.A.*,
850 F. Supp. 2d 557 (D. Md. 2012)..........................................................................13

*Falcone v. Middlesex County Medical Society*,
170 A.2d 791 (N.J. 1961)..........................................................................................11

*Grand Lodge v. Murphy*,
139 Md. 225 (1921) ....................................................................................................9

*Grempler v. Multiple Listing Bureau of Harford County, Inc.*,
258 Md. 419 (1970) ..................................................................................................11

*Grice v. Colvin*,
97 F.Supp.3d 684 (D. Md. 2015)...........................................................................2, 3

*Hall v. DIRECTV, LLC*,
846 F.3d 757 (4th Cir. 2017) ......................................................................................2

*Morgan v. Coppin State University*,
No. SAG-20-0723, 2020 WL 7707043 (D. Md. Dec. 29, 2020) ................................11

*Mutual Benefit Insurance Co. v. Lorence*,
189 F. Supp. 2d 298 (D. Md. 2002)............................................................................4

*NAACP v. Golding*,
342 Md. 663 (1996) ....................................................................................4, 5, 8, 9, 11

*Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools & Colleges*,
781 F.3d 161 (4th Cir. 2015) ....................................................................5, 6, 7, 11, 12

*Pruitt v. Alba Law Group, P.A.*,
No. DKC 15-0458, 2015 WL 5032015 (D. Md. Aug. 24, 2015)....................................................3

*Sharpe v. Am. Acad. of Actuaries*,
285 F. Supp. 3d 285 (D.D.C. 2018).........................................................................................6

*Small Business Financial Solutions, LLC v. Cavalry, LLC*,
No. DKC 22-1983, 2023 WL 284449 (D. Md. Jan. 18, 2023) .......................................................3

*South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*,
372 F.3d 245 (4th Cir. 2004) .................................................................................................2

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954)..............................................................................................................11

*USA English Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*,
No. 19-2308, 2021 WL 3162671 (4th Cir. July 27, 2021)..............................................................8

<u>Statutes</u>

28 U.S.C. § 2201...............................................................................................3, 4, 13

28 U.S.C. § 2202...................................................................................................13

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 10

Plaintiff, Keith N. Darrow ("Dr. Darrow"), by undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Dismiss (the "Motion") (ECF No. 31) filed by Defendant, American Speech-Language-Hearing Association ("ASHA") and in support thereof, states as follows:

## I. INTRODUCTION

Dr. Darrow filed this action seeking declaratory and injunctive relief against ASHA based upon its arbitrary and capricious finding against Dr. Darrow. At the pleading stage, the Court need not determine whether ASHA's Board of Ethics (the "BOE") reached the correct result, but only whether Dr. Darrow has sufficiently alleged that ASHA failed to afford him a fundamentally fair process and failed to adhere to its own rules. The Amended Verified Complaint ("Amended Complaint") (ECF No. 28) alleges that ASHA's proceedings and proposed sanction were arbitrary and capricious because the record contained no evidence that the two statements at issue—"Preventing dementia is possible" and "I teach people how to prevent cognitive decline and dementia"—were false or misleading (or otherwise contrary to the state of the science). The Amended Complaint further identifies specific, material departures from ASHA's own Practices and Procedures, which violated Dr. Darrow's due process protections. This is all Dr. Darrow must allege to survive a motion to dismiss, which is particularly true in an action for declaratory relief, where a motion to dismiss is rarely appropriate. ASHA's Motion disregards this distinction and improperly asks the Court to resolve the merits of the underlying dispute on the pleadings.

As set forth below, (i) Dr. Darrow's request for declaratory relief is properly before the Court; (ii) the Amended Complaint plausibly alleges that ASHA's decision was arbitrary and capricious; (iii) the Amended Complaint plausibly alleges that ASHA failed to follow its own Practices and Procedures; (iv) the Amended Complaint plausibly alleges that ASHA violated Dr.

Darrow's due process rights; and (v) Dr. Darrow properly seeks injunctive relief in connection with the declaratory judgment claim. For these reasons, ASHA's Motion should be denied in its entirety.

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not a probability requirement, but 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). In deciding a motion to dismiss, a court must accept all well-pleaded facts as true. *Id.* "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012).

As relevant here, "[a] district court possess broad discretion on whether to exercise its jurisdiction in declaratory judgment proceedings…." *South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 260 (4th Cir. 2004). "[A] motion to dismiss is rarely appropriate in a declaratory judgment action." *Grice v. Colvin*, 97 F.Supp.3d 684, 708 (D. Md. 2015) (citations omitted).

## III. ARGUMENT

### A. Dr. Darrow's Request for Declaratory Relief is Appropriate.

ASHA's Motion misapprehends the standards applicable to a claim for declaratory relief at the pleading stage. As stated above, this Court has long recognized that "a motion to dismiss for failure to state a claim is not the appropriate means of resolving a claim for declaratory relief." *Small Business Financial Solutions, LLC v. Cavalry, LLC*, No. DKC 22-1983, 2023 WL 284449, at *6 (D. Md. Jan. 18, 2023) (quoting *Pruitt v. Alba Law Group, P.A.*, No. DKC 15-0458, 2015 WL 5032014, at *8 (D. Md. Aug. 24, 2015)); *and see Grice*, 97 F. Supp. 3d at 708. "Indeed, 'the test of the sufficiency of [a declaratory judgment claim] is not whether it shows that the [pleader] is entitled to the declaration of rights' that it requests, but 'whether [the pleader] is entitled to a declaration at all.'" *Id.* (quoting *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. DKC 09–0100, 2011 WL 856374, at *18 (D. Md. Mar. 9, 2011)). "[A] declaration is appropriate where there is an 'actual, ongoing controversy' between the parties…." *Id.* (quoting *Pruitt*, 2015 WL 5032014, at *8); *and see* 28 U.S.C. § 2201.

Here, Dr. Darrow has clearly alleged an "actual controversy" such that the court "may declare the rights and other legal relations of any interested party seeking such declaration." *See* 28 U.S.C. § 2201. The Amended Complaint alleges that ASHA has rendered a final disciplinary decision proposing a public censure against Dr. Darrow, and Dr. Darrow contests the validity of that decision on the grounds that it was arbitrary and capricious and violated his due process rights.

To be sure, a declaratory judgment is appropriate where, as here, "the relief sought will serve a useful purpose in clarifying and settling the legal relations in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Mutual Benefit Insurance Co. v. Lorence*, 189 F. Supp. 2d 298, 300-01 (D. Md.

2002), *aff'd*, 59 Fed. Appx. 595, 2003 WL 1354845 (4th Cir. 2003). This case presents a textbook scenario for declaratory relief. The parties dispute the validity of an administrative decision, and a judicial declaration will conclusively resolve that dispute.

ASHA argues that the Court should decline to exercise its discretion under 28 U.S.C. § 2201 because Dr. Darrow "voluntarily submitted" to ASHA's disciplinary process. Motion at 13. This argument is unavailing. Voluntary membership in a quasi-public professional organization does not waive the member's right to challenge discipline that the organization imposes through procedures violating its own rules and fundamental fairness. *See NAACP v. Golding*, 342 Md. 663, 679 (1996) (stating "members in a private organization are entitled to at least rudimentary procedural protections, such as notice and an opportunity to be heard, before they may be expelled or deprived of other important membership rights"). Were the law otherwise, quasi-public organizations would essentially be immunized from judicial review no matter how egregiously they violated their own procedures. This cannot be.

In short, the only question at this stage is whether Dr. Darrow is entitled to declaratory relief, not whether he is entitled to the specific declaration he seeks. Because the Amended Complaint alleges an actual, ongoing controversy over the validity of ASHA's Final Decision, Dr. Darrow has properly asserted a claim for declaratory relief. Therefore, ASHA's motion to dismiss should be denied.

### B. The Amended Complaint Plausibly Alleges that ASHA's Decision was Arbitrary and Capricious.

Although not necessarily before the Court at the pleading stage, Dr. Darrow has more than adequately alleged that ASHA's decision was arbitrary and capricious such that it lacked fundamental fairness. Maryland courts "ordinarily refrain from reviewing decisions of unincorporated private associations," but when "an organization acts inconsistently with its own

rules, [the organization's] action may be sufficiently arbitrary to invite judicial review." *Golding*, 342 Md. at 678. The Fourth Circuit has likewise recognized "a common law duty on the part of quasi-public private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *See Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015) (internal quotations and citations omitted). Importantly, a court reviewing such a decision considers only whether it "was supported by substantial evidence or otherwise arbitrary and capricious." *Id.* at 166.

Indeed, nearly all of the cases cited in ASHA's Motion recognize that there is a mechanism by which decisions of voluntary associations can be reviewed under certain circumstances. For instance, ASHA principally relies on *Professional Massage* (cited above), which states, "[e]lementary principles of administrative law call for significant, ***though not total***, deference to decision making by accreditation agencies." 781 F.3d at 169 (emphasis added). ASHA further cites to *Butler v. USA Volleyball*, which recognizes that "courts have reversed association action only where there was a ***violation of the constitution or bylaws of the association***, ***when the association rules and proceedings violated concepts of fundamental fairness***, or when the association's action was motivated by prejudice, bias, or bad faith." 673 N.E.2d 1063, 1066 (Ill. App. Ct. 1996) (emphasis added). And finally, ASHA relies on *Sharpe v. Am. Acad. of Actuaries*, for the proposition that "[c]ourts ordinarily do not interfere with the internal disciplinary process of voluntary, private associations ***absent a failure of the association to follow its own rules*** …" 285 F. Supp. 3d 285, 293 (D.D.C. 2018) (emphasis added). Each of these cases confirms that decisions of voluntary associations are not entitled to "total" deference and, where a decision violates fundamental fairness and/or the voluntary association's own rules, courts may entertain

an evaluation of the underlying proceedings to determine whether they were arbitrary and capricious.

Here, Dr. Darrow alleges the BOE proceedings and the ultimate decision were arbitrary and capricious for the following reasons: (1) there was no evidence that any person was ever actually misled by Dr. Darrow's statements; (2) the only evidence in the record incontrovertibly established that his statements are scientifically accurate; (3) the BOE's reversal of its own "false" finding, while maintaining that admittedly true statements are "misleading," confirms that the remaining finding rests on subjective semantic preference rather than evidence; (4) the BOE's conclusion could not have satisfied the preponderance-of-the-evidence standard ASHA's own Practices and Procedures require; and (5) the Practices and Procedures supply no standard governing the imposition of sanctions and the censure was imposed on Dr. Darrow while other ASHA members and affiliates making the same or similar statements were never challenged.

*First*, no evidence in the record showed that any person was ever actually misled by Dr. Darrow's statements. Am. Compl. ¶¶ 46, 65, 68, 89, 92. Cavitt's Ethics Complaint identified no individual who was confused or harmed, and ASHA's (albeit improper) investigation uncovered none. *Id.* ¶¶ 43, 46, 55, 68. The BOE's conclusion rested entirely on speculation that a hypothetical person *might* be misled by Dr. Darrow's statements. ASHA's response is to observe that Dr. Darrow "does not deny that he made the statements that are the subject of this action," which ASHA offers as its proof that the decision "was supported by substantial evidence." Motion at 9. That conflates two entirely different questions. Whether Dr. Darrow *made* the statements was never in dispute; the question before the BOE was whether the statements were *misleading*. Am. Compl. ¶ 88; n.10. Evidence that the statements were made is not evidence that they were

misleading, and ASHA identified no evidence in the record supporting that finding. *Id.* ¶¶ 59, 89, 92.

*Second*, the only evidence in the record affirmatively *contradicted* the BOE's conclusion: Dr. Darrow submitted peer-reviewed medical literature, the written and video testimony of Mitchell Clionsky, Ph.D., ABPP-CN, an undisputed expert in neuropsychology, dementia, and dementia prevention, the testimony of Bopanna Ballachanda, Ph.D., a past president of the American Academy of Audiology, and letters from professional colleagues, all confirming that his statements are scientifically accurate. Am. Compl. ¶¶ 50-53, 66, 69. Further, the allegedly misleading statements use similar language appearing in materials published by ASHA itself, as well as peer-reviewed publications and related sources. *Id.* ¶¶ 49, 51-52, 67. The BOE offered no countervailing evidence (*i.e.*, no competing expert, no literature, no evidence of actual confusion). *Id.* ¶¶ 89, 92. ASHA's invocation of the fact that courts do not "reweigh conflicting evidence" is therefore misplaced. Motion at 10. This presupposes conflicting evidence, and here, as alleged, there is none to re-weigh. Dr. Darrow does not ask the Court to reweigh the record. Rather, he asks the Court to accept, as it must at this stage, his allegation that there was nothing on the other side of the scale.

*Third*, the BOE initially found Dr. Darrow's statements "false," then reversed that finding and conceded the statements are true while maintaining they are "misleading." Am. Compl. ¶ 75 n.9, ¶ 90. The reversal concedes that the statements are scientifically accurate. What remains is the BOE's subjective semantic preference—its view that a lay person *might* read these accurate statements to mean something Dr. Darrow never said, that dementia can be prevented "altogether." *Id.* ¶ 3. A finding resting on speculation about possible misinterpretation of an admittedly true

statement is arbitrary, and it confirms that the only fact ASHA can point to—that the statements were made—has no bearing on the element actually at issue.

*Fourth*, the Practices and Procedures require violations to be established by a "preponderance of the evidence," and further require dismissal of the complaint where that burden is not met. *Id.* ¶ 91. The Amended Complaint alleges that standard was not satisfied. *Id.* ¶¶ 91-92.

*Fifth*, the Amended Complaint alleges that the Practices and Procedures supply "no standard or metric for determining whether or what sanction should be imposed under any scenario," instead conferring "unbridled discretion" on the BOE regardless of the circumstances, the respondent's intentions, or the absence of prior notice or warning. *Id.* ¶¶ 93-94. It further alleges that "droves of ASHA members or affiliates" publish the same or similar statements regarding dementia prevention without ever being subject to ethics complaints. *Id.* ¶ 49. When an association wields standardless sanctioning authority selectively against a single member, it acts arbitrarily, and the Court must accept Dr. Darrow's allegations of unexplained disparate treatment as true at this stage.

In any case, ASHA's argument that the BOE's decision should be given deference is premature. The deferential standard of review applies when a court evaluates a quasi-public organization's decision after the parties have developed a full evidentiary record through fulsome discovery. It does not apply at the pleading stage to insulate an organization from having to defend its decision in litigation. *See USA English Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, No. 19-2308, 2021 WL 3162671, at *2-3 (4th Cir. July 27, 2021) (per curiam) (vacating and remanding the district court's dismissal of due process and breach of contract claims against an accrediting agency because the district court improperly resolved the merits at the pleading stage). Where, as here, the Amended Complaint alleges an administrative

record devoid of support for the challenged decision, Dr. Darrow has clearly alleged a plausible claim sufficient to defeat a motion to dismiss.

### C. The Amended Complaint Plausibly Alleges that ASHA Failed to Follow its Own Practices and Procedures.

Independent of the arbitrary and capricious nature of the BOE's proceedings and ultimate decision, the Amended Complaint identifies specific, material deviations from ASHA's own Practices and Procedures, which invite judicial review. *See Golding,* 342 Md. at 678-79 ("If the organization's adjudicatory procedure does not afford the member these minimal protections, or if the organization provides no avenue for internal review or appeal, then judicial intervention may be appropriate.") (citing *Grand Lodge v. Murphy*, 139 Md. 225, 233 (1921)). Here, Dr. Darrow alleges at least four (4) independent violations of ASHA's Practices and Procedures, each of which deprived Dr. Darrow of the "minimal protections" the policies were intended to provide. *Id.; and see* Am. Compl. ¶¶ 95-96.

*First*, the BOE initially found that Dr. Darrow violated Principle of Ethics IV, even though Ms. Cavitt's complaint never alleged such a violation. Am. Compl. ¶ 55. Practices and Procedures § II.G (attached to the Amended Complaint as Exhibit C) expressly prohibits the BOE from conducting "independent investigations" beyond the scope of the complaint. *Id.* By finding a violation that was never alleged, the BOE exceeded its authority and violated its own rules.[1]

[1] ASHA argues that this violation is "moot" because the BOE ultimately reversed the Principle IV finding. Motion at 11. This argument fails for two reasons. First, the initial overreach demonstrates a pattern of procedural irregularity that colors the entire proceeding. At the pleading stage, Dr. Darrow is entitled to the reasonable inference that the BOE's willingness to exceed its authority on one issue may have infected its analysis of other issues. Second, the reversal does not cure the procedural violation — it merely limits its direct consequences. That the BOE felt free to find a violation Cavitt never alleged shows a fundamental disregard for the procedural constraints that exist to protect respondents like Dr. Darrow.

*Second*, Practices and Procedures § III.J.2 provides that the "Senior Director of Ethics" shall evaluate a Request for Appeal. Am. Compl. ¶ 79. Instead, Dr. Darrow's appeal was decided by an "Ethics Appeal Panel," which is a body not authorized to perform this function under the applicable rules. *Id.* The rules designate the Senior Director of Ethics to evaluate appeal requests, presumably because that individual possesses the institutional knowledge and familiarity with the proceedings necessary to make an informed threshold determination. By substituting a different decision-maker, ASHA materially deviated from its established procedures.

*Third*, Practices and Procedures § III.J.2 requires only that a member's Request for Appeal "assert" that clear and convincing evidence warrants reversal. *Id.* ¶ 78. ASHA instead required Dr. Darrow to "show" clear and convincing evidence—a materially higher burden. *Id.* The distinction between "assert" and "show" is not semantic, but rather is the difference between a threshold pleading requirement (akin to alleging facts) and a substantive evidentiary burden (akin to proving them). By requiring Dr. Darrow to satisfy the latter at the appeal-request stage, ASHA effectively denied him the right to appeal by setting an impossibly high bar for even obtaining appellate review.

*Fourth*, Practices and Procedures § III.E.1 requires the BOE to determine violations of the Code of Ethics by a "preponderance of the evidence." *Id.* ¶ 91. Where, as alleged, the record contained no evidence supporting the BOE's finding (in fact, there was substantial evidence contradicting the finding), the Practices and Procedures required dismissal. *Id.* ¶¶ 91-92; *and see* Practices and Procedures § III.D.2.c. The BOE's failure to dismiss under these circumstances therefore violated its own procedures.

ASHA contends that each of these failures is merely a "technical deviation" that did not prejudice Dr. Darrow. Motion at 12. However, whether these procedural failures are technical or

material presents a factual question that the Court cannot resolve on a Rule 12(b)(6) motion. Dr. Darrow alleges they are material. At this stage, the Court must accept that characterization as true. Whether the deviations ultimately prejudiced the outcome is a question for later proceedings, not for the pleading stage.

### D. The Amended Complaint Plausibly Alleges Violations of Dr. Darrow's Due Process Rights.

Under the common law framework applicable to quasi-public organizations, members "are entitled to rudimentary procedural protections, such as notice and an opportunity to be heard before they may be expelled ***or deprived of other important membership rights.***" *Golding*, 342 Md. at 678-79 (emphasis added); *and see Morgan v. Coppin State University*, 2020 WL 7707043, at *4 (D. Md. Dec. 29, 2020) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)) ("[A] due process violation can accrue in certain circumstances, where an administrative agency fails to follow its own rules, regulations, and policies guaranteeing such process."). Additionally, Maryland courts "have acknowledged the need for increased judicial oversight in one instance, i.e., where the private organization has assumed a position of 'real economic power' akin to monopoly status." *Golding*, 342 Md. at 679 (citing *Grempler v. Multiple Listing Bureau of Harford County, Inc.*, 258 Md. 419, 426 (1970)); *accord Falcone v. Middlesex County Medical Society*, 170 A.2d 791, 799 (N.J. 1961) (observing that a professional organization with power over practitioners should exercise that power "in reasonable and lawful manner for the advancement of the interests of the medical profession and the public generally…"). As the court explained in *Pro. Massage*, "due process claims dovetail nicely with administrative law concepts of substantial evidence and arbitrary and capricious review because the prominent point of emphasis of due process is one of procedure." 781 F.3d at 172.

Importantly, ASHA's Bylaws require that "the procedures formulated by the Board of Ethics for processing allegations of Code of Ethics and Code of Conduct violations" must "comply with basic due process considerations." Am. Compl. ¶ 95. Further, Dr. Darrow alleges that ASHA is a quasi-public entity controlling the primary professional credential for audiologists, Am. Compl. ¶¶ 21-22, 83, and that his ASHA certification is effectively mandatory for continued employment as a tenured professor. *Id.* ¶¶ 22, 27.

ASHA argues that Dr. Darrow "cannot deny that he was afforded a full opportunity to plead his case." Motion at 10. However, providing a forum does not by itself satisfy due process. According to the Fourth Circuit, the inquiry is whether the organization's rules "provided a fair and impartial procedure ***and*** whether the association followed its rules in reaching its decision." *Pro. Massage*, 781 F.3d at 172 (internal quotations and citations omitted), (emphasis added). The Amended Complaint alleges ASHA failed the second half of that inquiry at multiple stages, and that the BOE disregarded the only evidence before it. Am. Compl. ¶¶ 55, 78-80, 89-92.

In any event, the Court cannot resolve on a motion to dismiss whether ASHA afforded Dr. Darrow adequate process. That question requires evaluating the proceedings as a whole, including the procedural irregularities, the evidentiary record before the BOE, the reasoning underlying its decision, and the conduct of the appeal, all of which requires a fact-specific inquiry that discovery and the merits stage must resolve. At this stage, the Court must accept Dr. Darrow's allegations as true, and those allegations plausibly establish that ASHA failed to follow its internal rules and governing documents, thereby violating Dr. Darrow's due process rights. ASHA's motion should therefore be denied as to Dr. Darrow's due process claim.

### E. Dr. Darrow Properly Seeks Injunctive Relief in Connection with the Declaratory Judgment Claim.

Finally, ASHA argues that injunctive relief is not an independent cause of action. Motion at 7. However, this Court has permitted plaintiffs to seek equitable relief where they have pled other substantive causes of action. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573-74 (D. Md. 2012) (acknowledging, on a motion to dismiss, that the plaintiff's claim for an injunction was not an independent cause of action but allowing the request to proceed because the plaintiff had adequately pled his substantive claims).

Importantly, if this Court declares ASHA's decision arbitrary and capricious, or finds that ASHA violated Dr. Darrow's due process rights, enjoining the public censure is appropriate equitable relief to effectuate the declaratory judgment. The Declaratory Judgment Act expressly authorizes "[f]urther necessary or proper relief based on a declaratory judgment," which often includes appropriate injunctive relief. *See* 28 U.S.C. § 2202. A declaratory judgment finding ASHA's decision arbitrary and capricious would be hollow if ASHA remained free to publish the censure. As the Amended Complaint alleges, Dr. Darrow faces catastrophic and irreparable harm from public censure, including loss of his tenured faculty position, retraction of confirmed domestic and international speaking invitations, loss of his continuing education presenter credentials, foreclosure of peer-reviewed publishing opportunities, loss of reputation-based consulting work, and loss of his status as a Certified Dementia Practitioner, which he projects at $30 to $50 million in damages over fifteen (15) years. Am. Compl. ¶¶ 97-105, 114.[2] Injunctive relief is the only mechanism by which the Court can provide Dr. Darrow with complete relief.

---

[2] ASHA suggests in a footnote that Dr. Darrow's alleged harm is "speculative and hyperbolic" because none of it has materialized during the months this case has been pending. Motion at 7 n.17. That argument misses the point. ASHA agreed not to publish the censure until this litigation concludes. Am. Compl. ¶ 82. This particular harm has not yet occurred because ASHA has not yet posted the actual censure (as opposed to the proposed censure)—which is exactly what Dr. Darrow brought this case to prevent.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Dr. Keith N. Darrow respectfully requests that this Court deny Defendant ASHA's Motion to Dismiss the Amended Complaint in its entirety.

Dated: August 17, 2026

Respectfully submitted,

*/s/ William M. Krulak, Jr.*
William M. Krulak, Jr., Fed. Bar No. 26452
Patrick F. Toohey, Fed. Bar No. 20723
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 (fax)
wkrulak@milesstockbridge.com
pftoohey@milesstockbridge.com

*Attorneys for Plaintiff,*
*Keith N. Darrow*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of August 2026, I caused a copy of the foregoing to be served via ECF filing to all counsel of record and sent by e-mail to:

John T. Bergin
Kilpatrick Townsend & Stockton LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20004
jbergin@ktslaw.com

Samera S. Ludwig
Kilpatrick Townsend & Stockton LLP
500 W. Madison Street, Suite 3700
Chicago, Illinois 60661
sludwig@ktslaw.com

William N. Sinclair
Todd W. Hesel
Christopher J. Mincher
Silverman Thompson Slutkin & White
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
bsinclair@silvermanthompson.com
thesel@silvermanthompson.com
cmincher@silvermanthompson.com

/s/ *William M. Krulak, Jr.*
William M. Krulak, Jr.